Scot L. Claus (#014999)
sclaus@dickinsonwright.com
Vail C. Cloar (#032011)
vcloar@dickinsonwright.com
Holly M. Zoe (#032011)
hzoe@dickinsonwright.com
DICKINSON WRIGHT PLLC
1850 N. Central Ave., Suite 1400
Phoenix, Arizona 85004-4568
Telephone: (602) 285-5000
Facsimile: (844) 670-6009
[Firm Email: courtdocs@dickinsonwright.com]
*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Stuart, | Case No.CV-21-01917-PHX-DJH -JZB |
| Plaintiff, | |
| v. | **JOINT CASE MANAGEMENT REPORT** |
| City of Scottsdale, et al., | |
| Defendants. | |

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and this Court's order (Doc. 38), the parties submit the following the Joint Case Management Report:

1. **List of Parties in the Case.** The denominated plaintiffs are Mark Stuart and Virginia Stuart and the defendants are the City of Scottsdale, Officer Jason Glenn, Officer Tom Cleary, Officer Sage Randall, Bruce Washburn and Jane Doe Washburn, and Mayor Jim Lane and Joanne Lane, Jim Thompson and Kristen Thompson, City Attorney Sherry Scott, Luis Santaella, Council members Kathy Littlefield, Solange Whitehead, Linda Milhaven, David Ortega, Tami Caputi, Betty Janik, and Tom Durham.

2. **Short Statement of the Nature of the Case.**

**DEFENDANTS POSITION:**

- 1 -

Plaintiffs have failed to comply with this Court's Order (Doc. 35). They have failed and refused to eliminate claims that have been previously adjudicated; and they have failed and refused to eliminate claims that are duplicative of claims already asserted. Plaintiffs' violation of this Court's Order should lead to the striking or dismissal of Plaintiffs' Complaint. Furthermore, this Court has already determined that certain Defendants are entitled to qualified immunity. (*Stuart II* Doc. 119 at 11). Plaintiffs should not be permitted to challenge that conclusion in this litigation.

Plaintiffs' insistence that "facts matter" is meaningless in light of their **assertion of the same facts** here that were already asserted in the *Stuart II* litigation. Indeed, the complaint was amended in *Stuart II* to assert a host of allegations for violations of 42 U.S.C. § 1983 identical to those Plaintiffs have attempted to frame in this case:

- "In February 2017, Washburn, Lane and Scottsdale caused Mark Stuart to be arrested and prohibited him from speaking at open public comment in a city council meeting about unconstitutional speech practices utilized by Scottsdale." [*Stuart II* Doc. 93, ¶ 132.]
- "Arresting Stuart and prohibiting him from speaking is an example of the implementation of Scottsdale's equal protection and due process violation policies." [*Id.* ¶ 133.]
- "[T]here was more than four hours of testimony about the role of the Mayor and city attorney Bruce Washburn in Stuart's arrest." [*Id.* ¶ 134.]
- "Washburn . . . [is an] official policy makers for Scottsdale" [*Id.* ¶ 149.]
- "The actions by [Washburn and Lane] named in this Count prevented the Stuarts from speaking freely and publishing freely, discouraged the Stuarts from speaking freely and publishing freely, and sought to punish the Stuarts for speaking freely and publishing freely." [*Id.* ¶ 179.]

- "In April 2018, Defendants LANE, WASHBURN . . . AND SCOTTSDALE were informed that Mark Stuart was being treated for depression and anxiety because of Scottsdale actions harassing him while he was peacefully exercising his First Amendment rights in Scottsdale." [*Id.* ¶ 208.]

In August 2021, Judge Teilborg granted summary judgment as to a number of claims in *Stuart II*, concluding that all the individual defendants—including former Mayor Lane, and former City Attorney Bruce Washburn—were entitled to qualified immunity. [*Stuart II* Doc. 119 at 11.]

On March 9, 2022, Judge Teilborg granted summary judgment as to all remaining claims in *Stuart II*, including a *Monell* claim against the City, finding that "Plaintiffs have failed to show Defendants caused a constitutional deprivation." [*Stuart II* Doc. 151 at 5.] Further, Judge Teilborg concluded that, even if Mr. Stuart could establish a constitutional violation (and he did not), he had "failed to show that Scottsdale had a custom, pattern, practice, or policy of violating constitutional rights." [*Id.* at 8.] Critically, Judge Teilborg also expressly found that Mr. Washburn was *not* a final policy maker for the City of Scottsdale. [*Id.* at 8–9.] Judge Teilborg entered judgment against Mr. Stuart, which he appealed. On August 2, 2023, the Ninth Circuit affirmed the judgment in *Stuart II* in all respects. That judgment is binding on Plaintiffs and cannot be challenged in this litigation.

**PLAINTIFF'S POSITION :**

Defendants position is a surreply to their motion to strike, doc. 41  This Court should disregard it in its entirety.

Plaintiffs are pursuing seven claims.  There is no valid factual basis for defendants claims that plaintiffs are pursuing claims that have already been adjudicated.  Robust discovery will show that Scott, Lane, Thompson  and Washburn are/were the finalpolicymakers regarding prosecutions in Scottsdale, and that the City acted to pursue these prosecutions, i.e.,

- 3 -

directly participated in them.  Who is the finalpolicy maker regarding police practices for returning property? Discovery will reveal this.

Defendants do not understand that the date a claim accrues matters for pleading.  A plaintiff has to replead the facts giving rise to the new claim, after it accrues. Otherwise the plaintiff loses his right to pursue this claim. "A claim for malicious prosecution does not accrue until the prior proceedings have terminated in the accused's favor, including any pending appeal that could lead to further proceedings." *Donahoe v. Arpaio*, 986 F. Supp. 2d 1091, 1108 (D. Ariz. 2013) "If the harm arose from different facts at a different time, however, then the plaintiff could not have brought the claim in the first action. *Howard v. City of COOS Bay* , 871 F. 3d 1032, 1039 (2017) "claim preclusion does not apply to claims that accrue after the filing of the operative complaint."

**Count II** involves two distinct claims for malicious prosecution. Plaintiffs allege and will prove that defendants Lane, Washburn, Santaella , Cleary, Randall  and Glenn set in motion in a series of events that caused Mark Stuart to be prosecuted for trespassing , when these defendans knew there was no probable cause to believe that Mark Stuart was trespassing under A.R.S. 13-1503(A)   Plainitffs will prove that these defendants learned about Feb. 21, 2017, that there was no probable cause to believe that Mark Stuart was trespassing, and that despite this knowledge , these defendants continued to advocate for Mark Stuart's prosecution for trespassing.   The evidence will show that none of the defendants had any evidence that showed that Mark Stuart knowingly entered the open call to the public (public comment) at the Scottsdale city council meeting on Feb. 7, 2017 unlawfully, or that Mark Stuart knowingly remained unlawfully at the open call to the public (public comment)   The evidence will show that defendants caused Mark Stuart to be prosecuted for trespassing to retaliate on him for peacefully exercising his free speech rights, to discourage him from engaging in free speech in the future, to deny him the equal protection of the law, and to curtail his liberty interests through criminal process.

- 4 -

1    Plaintiffs will prove that defendants Scottsdale, Lane , Santaella, and Scott caused
2 Mark Stuart to be prosecuted for making threats under A.R.S. 13-1201(A)(1), when they knew
3 there was not probable cause to believe that he had made a true threat as defined by controlling
4 law, and that they knew there was no chance of success under controlling law. The evidence
5 will show that defendants caused Mark Stuart to be prosecuted for making threats to retaliate
6 on him  for engaging in prior protected free speech, and to impair his ability to present a
7 defense in the trespassing prosecution.
8    Plaintiffs allege and will prove that the city of Scottsdale, Lane, Washburn, Santaella,
9 Scott, Randall, Cleary and Glenn, (collectively "Scottsdale") and possibly, others created and
10 pursued an official policy  of retaliation  and reprisal for Stuart's prior protected speech, which
11 was executed, in part, by prosecuting Stuart for allegedly trespassing and allegedly making
12 threats.
13    **Count I** alleges violation of equal protection and due process, related to the trespassing
14 and threats prosecution. The evidence will show that Scottsdale , as part of an official policy of
15 retaliation, denied Mark Stuart exculpatory evidence in the trespassing prosecution. The
16 evidence will show that Scott, Lane, Santaella,  and Scottsdale caused Mark Stuart to be
17 selectively prosecuted for allegedly making threats, becasue of his identity and political
18 beliefs. The evidence will show that Scott, Lane and Scottsdale prosecuted Mark Stuart for
19 threats, despite knowing that the prosecutor had a disqualifying conflict of interest.
20    **Count III** is an unreasonable continued seizure of the Stuarts' guns and ammunition,
21 which violated the Stuarts clearly established Fourth Amendment rights. The evidence will
22 show that because of  the implementation of an official written policy and  customary
23 practices, Scottsdale , Santaella, Scott and Thompson   unreasonably  interfered with the
24 Stuarts possessory interests in their property for almost ninety days, in direct contravention of
25 Ninth Circuit precedent such as  *Miranda v. city of Cornelius*, 429 F.3d 858 (9th Cir. 2005)
26 and *Brewster v. Beck*, 859 F.3d 1194 (9th Cir. 2017).

4868-0847-6724 v1 [53387-7]

**Count IV** is a Monell Claim against the City, based on direct participation, ratification, and adoption of de facto unconstitutional policies, written and unwritten, failure to train by the City and some of its final policymakers in Count I to III.

**Count V** is a First Amendment retaliaiton , burdening , suppressing and chilling claim , based on the threats prosecution, an unconstitutional , undefined jurisdictional speech requirement for the open call to the public ( public comment), which chilled and suppressed Mark Stuart's free speech rights in October and November 2021.

**Count VI** is a state law malicious prosecution claim for the threats prosecution, against Scottsdale, Scott and Lane.

**Counts VII** and **VIII** ask this Court to invalidate A.R.S. 13-1202(A)(1) for vagueness and overbreadth in violation of the First and Fourteenth Amendments.

Discovery will show that Scottsdale adopted an official policy of prosecuting Mark Stuart in retaliation for his prior protected free speech, and for other unconstitutional reasons.

Facts matter. Judge Teilborg did not rule that the Scottsdale city attorney is never a final policymaker for any decision. Judge Teilborg's ruling is limited to the facts presented in that case, which are distinctly different than the facts of this case. Judge Teilborg did not rule that the Mayor or city manager is never a final policymaker for any decision.

3. **Jurisdictional Basis for the Case**. Plaintiffs have brought this case pursuant to 42 U.S.C. § 1983. 28 U.S.C. § 1367(a) provides the basis for the state law claim. 28 U.S.C. §§ 2201 and 2202 and Rule 57 and 65 of the Federal Rules of Civil Procedure is the basis for counts VII and VIII. Defendants assert that the Court should refuse to exercise jurisdiction over previously adjudicated and/or duplicative claims. Furthermore, Plaintiffs' assertion that Rules 57 and 65 of the Federal Rules of Civil Procedure provide a substantive basis for cognizable claims is fundamentally incorrect.

4. **Parties Which Have Not Been Served**.

**PLAINTIFF'S POSITION:**

4868-0847-6724 v1 [53387-7]

<u>All parties have been served</u>

**DEFENDANTS' POSITION**:

Plaintiffs' assertion that "[a]ll parties have been served" is nonsensical. Should the Court refuse to enforce its Order (Doc. 35) and permit Plaintiffs newly added claims challenging the constitutionality of Arizona statutes remain, then the State is a necessary and indispensable party. *See* Fed. R. Civ. P. 5.1 (requiring the Court to "certify to" the Arizona Attorney General that an Arizona statute has been challenged, and giving the Arizona Attorney General at least 60 days to intervene). The State has not been "served"—it has not even been named as a party by Plaintiffs.

5.  **Amendment of Pleadings**.

**PLAINTIFF'S POSITION:**

Plaintiff plans to seek to amend the complaint to conform to the evidence at trial, which will very likely lead to the addition of other parties, and will almost certainly add additional claims.

**DEFENDANTS' POSITION**: The Court's Order (Doc. 35) could not have been more clear in its prohibition against the addition of any "any new claims or parties." (Doc. 35 at 8). Yet, Plaintiffs flouted the Court's Order and have admittedly added "new claims" which will necessitate the addition of new "parties." Indeed, as noted above, because Plaintiffs' impermissible First Amended Complaint attempts to challenge the constitutionality of a ***state*** statute, the State of Arizona would be a necessary and indispensable party should the Court permit Plaintiffs to violate this Court's Order. In any event, pursuant to controlling authority, Plaintiffs must amend their operative pleading within any deadlines set by this Court. *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 608 (9th Cir. 1992).

6.  **List of Contemplated Motions in a Statement of the Issues to be Decided by These Motions**.

4868-0847-6724 v1 [53387-7]

**DEFENDANTS' POSITION:**

Pursuant to long-standing Supreme Court authority, this Court should decide whether the individual defendants are entitled to qualified immunity at the earliest possible stage of the litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) ("For this reason, we have emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation."). To be sure, more than 40 years ago, the Supreme Court established the following paradigm: "the *Harlow* Court refashioned the qualified immunity doctrine in such a way as to 'permit the resolution of many insubstantial claims on summary judgment' and to avoid 'subject[ing] government officials either to the costs of trial or to the burdens of broad-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time.'" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)). Here, this Court has already determined that many of the defendants are entitled to qualified immunity. (*Stuart II* Doc. 119 at 11). Further, as noted above, Plaintiffs have failed to comply with the Court's Order and their extant Complaint should be stricken. The Court should hold any discovery in abeyance until after the Court determines what claims or defendants, if any, remain in this matter.

In any event, only after the Court determines what claims remain extant, if any, can Defendants be expected to properly frame a dispositive Rule 12 motion. Should any claims survive dismissal, then Defendants will seek summary judgment.

**PLAINTIFF'S POSTITION:**

There is no qualified immunity for any of the claims in this case. Retaliatory prosecutions, such as alleged here, have long been clearly established as a violation of the First and Fourth amendments. Defendants have no chance of success on issue or claim preclusion. By way of example, Defendants have successfully argued that they did not need to prove a true threat to

- 8 -

receive a civil injunction against workplace harassment against Mark Stuart under ARS 12-1810, based on Mark Stuart's conversations with psychiatric personnel in May and Nov. of 2019. In the injunction proceedings, Mr. Johnson, Scottsdale' attorney, argued repeatedly that, "………the Court is to review the evidence and determine that an objectively reasonable person would've felt threatened by the defendant's behavior." Scottsdale argued that context and intent did not matter. The Superior Court granted them relief—the injunction against workplace harassment—based on these arguments. Scottsdale is judicially estopped from changing its arguments and positions now. See *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 40 (9th Cir. 2022) See also Manolian v. Lytle, No. CV-20-00365-PHX-DJH (D. Ariz. Mar. 7, 2022) ( "Judicial estoppel . . . precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position, " either in the same action or in different actions.")

    Plaintiffs will be lodging a motion for partial summary judgment based on Counts II, III,IV, V and VI within in the next ninety days.

    Plaintiffs believe that defendants will impede discovery by improperly asserting attorney client privilege, legislative privilege, and deliberative process privilege. Plaintiffs anticipate that many discovery disputes will need to be resolved by this Court.

    Discovery is needed to prove direct or indirect participation, ratification , failure to train, and who knew what and when. Discovery is needed to prove that there was no probable cause to believe that Stuart was doing anything unlawful. Discovery is needed to establish Scottsdale's

unconstitutional motives.[1] Discovery is needed to prove differential treatment of similarly situated individuals in the threats and trespassing prosecutions. .

Plaintiff will be serving defendants with RFAs, RFPs and Interrogatories as soon as this Court allows it. Defendants will have thirty days to respond. Plaintiff anticipates lack of cooperation from defendants in discovery, based on defendants past discovery conduct in other cases. Plaintiff anticipates that he will be forced to file several motions to compel.

7. **Consent to a Magistrate Judge**. The parties do not consent to the assignment of this action to a Magistrate Judge.

8. **Status of Related Cases**. Discovery is underway in CV-17-01848-DJH(JZB). There are a number of outstanding discovery disputes, and two depositions that need to be completed; Cleary , Scottsdale 30(b)(6)

DEFENDANTS' POSITION: As noted in this Court's Order (Doc. 35), the claims framed by Plaintiffs' First Amended Complaint are duplicative of claims that: a) have already been dismissed with prejudice and may not be reasserted; or b) are already pending in the 2017 Litigation.

9. **Exchange of Rule 26(a) Initial Disclosures**.

**DEFENDANTS' POSITION**:

Defendants propose that the Court hold the exchange of disclosure statements in abeyance until after the Court determines if any claims or defendants remain.

**PLAINTIFF'S POSITION:**

Plaintiff asks that initial disclosure statements be due on or before **Oct. 15, 2023**.

10. **Issues Related to Disclosure or Discovery of ESI**. The parties are currently unaware of any issues relating to the disclosure or discovery of electronically stored

---

[1] Scottsdale = the city of Scottsdale, Lane, Washburn, Santaella, Cleary , Randall, Scott, Thompson, and Glenn.

information. The parties will discuss ESI issues within two weeks after the scheduling conference.

11. **Issues Relating to Privilege**.  The parties are currently unaware of any issues relating to privilege. See comment above

12. **Necessary Discovery**.

**DEFENDANT'S POSITION**:

As noted above, Plaintiffs have failed to comply with this Court's Order (Doc. 35); the Court has determined that individual defendants are entitled to qualified immunity; and the Court has dismissed *Monell* claims against the City. No discovery should be permitted unless and until the Court determines whether any claims or defendants remain in this matter. In any event, this Court should limit discovery and decide issues of qualified immunity prior to subjecting the individuals who may be entitled to qualified immunity to the burdens of litigation. *Crawford-El*, 523 U.S. at 600 ("[T]he judge should give priority to discovery concerning issues that bear upon the qualified immunity defense, such as the actions that the official actually took, since that defense should be resolved as early as possible."); *Anderson v. Creighton*, 483 U.S. at 646 n. 6 ("One of the purposes of the *Harlow* qualified immunity standard is to protect public officials from the 'broad-ranging discovery' that can be "peculiarly disruptive of effective government."). For this reason, the Supreme Court has repeatedly emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation. *Harlow,* 457 US at 818; *Mitchell,* 472 U.S. at 526(1985).

Accordingly, the Court should initially limit any discovery only to issues related to the assertion of qualified immunity.  If the Court declines to extend qualified immunity to one or more of the individual defendants, then the following discovery on the merits will be necessary.

**PLAINTIFF'S POSITION:**

4868-0847-6724 v1 [53387-7]

1    Plaintiff has fully complied with this Court's order, as explained in plaintiff's response to defendants motion to strike. (doc. 42)

Discovery is necessary to establish Scottsdale, Lane, Scott , Santaella and Washburn's participation in Stuart's prosecutions, to provide evidence of an official policy of retaliation for Stuart's speech prior to his arrest on Feb. 7, 2017, and afterward.  See *Lozman v. Riviera Beach*, 138 S. Ct. 1945, 1954 (2018) Discovery is necessary about Lane, Washburn, Scott, Thompson, Santaella,  and Scottsdale's knowledge of Stuart's free speech activities in Scottsdale and related to Scottsdale from Oct. 1, 2016 through March 31, 2018. This discovery helps to prove an official policy of retaliation for prior speech.

Discovery is necessary to establish that Mark Stuart is the only person the Scottsdale prosecutor has charged with making threats under ARS 13-1202(A)(1) in the past twenty years, because of confidential conversations with a psychiatric nurse who was evaluating him for treatment. Others have done what Mark Stuart did, seek psychiatric help, and have not been prosecuted.

Discovery is necessary about Scott, Thompson and Santaella's roles and involvement in the City's refusal to return the Stuarts guns and ammunition to them,  how the policy described by the police in July 2021 is customarily implemented, and what training the city provided Scottsdale police about the Fourth Amendment after *Brewster v Beck*, 859 F.3d 1194 (9th Cir. 2017).

Discovery is necessary about the City Council's non-public discussions about Mark Stuart and his prosecution for trespassing , the SOP Initiative and the rules of public comment , from Feb. 8, 2017 , through Dec.  31, 2018.  Discovery is necessary about the City Council members discussions and decisions related to Mark Stuart's prosecution for threats in 2019, their advocacy for this prosecution, and Lane , Scott and Santaella's role in causing this prosecution to happen.  Discovery is necessary about the historical practices at open public comment and citizen petitioning time  in Scottsdale city council meetings, from Feb. 8, 2017

4868-0847-6724 v1 [53387-7]

through Dec. 31, 2018. ( citizen petition time and open public comment are collectively "open public comment") Discovery is needed about Lane, Washburn, Santaella, Cleary and Glenn's training about First Amendment rights in city council meetings. Discovery is necessary about all the actions and communications between Lane, Washburn, Santaella, Cleary and Glenn about Mark Stuart, or the SOP Initiative , thirty days prior to Stuart's arrest, through Jan. 20, 2020., Discovery is necessary about Lane Scott, Thompson and Washburn's status as official policymakers for Scottsdale. Discovery is necessary about Lane and Scottsdale's attitudes and opposition to the SOP Initiative, from Dec. 1, 2016 to Nov. 30, 2018 . Discovery will show that Scottsdale's opposition included the entire City Council.

As this Court can see, there is a need for wide ranging discovery to prove the existence of an official policy of retaliation for Stuart's prior protected speech.

      a.     **Nature, Extent, and Location of Discovery Anticipated by the Parties**.

**DEFENDANTS' POSITION:**

Defendants incorporate by reference their position set forth in sections 2, 6 and 12, above.

**PLAINTIFF'S POSITION:**

Plaintiff will be serving defendants with RFAs, RFPs, and Interrogatories, as soon as this Court allows discovery to proceed. All discoverable information is in defendants possession. Defendants Lane and Washburn , used their personal emails and cell phones to communicate about Scottsdale business, including about Mark Stuart and the SOP Initiative. It will be necessary to gain texts and emails from their cell phones, as well as their personal emails. Plaintiff believes that Scottsdale has destroyed a lot of evidence that he could use to support his claim. It may be necessary to have a data systems expert search Scottsdale's systems to confirm the destruction of this evidence.

4868-0847-6724 v1 [53387-7]

      b.      **The Scope of Discovery or whether discovery should be conducted in Phases**.

**DEFENDANTS' POSITION:**

Defendants' incorporate by reference their position set forth in sections 2, 6 and 12, above. Moreover, the Court should not permit any discovery in excess of the presumptive limits.

**PLAINTIFF'S POSITION:**

There should be no limitations on discovery, other than those defined in FRCP 26(b). Plaintiff would like to serve defendants Lane, Washburn, Scott, Santaella, Thompson and Scottsdale with twenty-five interrogatories per defendant in two steps. The first set would be fifteen interrogatories. The second set of ten interrogatories would allow plaintiff to obtain clarification of any issues, and collect evidence of evasive, obfuscatory conduct, which would be presented to a jury to attack defendants credibility.

      c.      **Discovery Limitations**.  The parties incorporate by reference their position set forth above.

**DEFENDANTS' POSITION**: Defendants incorporate by reference their positions set forth in Sections 2, 6 and 12, above. Moreover, because Mr. Stuart has previously threatened to kill certain Defendants, violently attack other Defendants, and blow up City property, Defendants request that any deposition discovery take place in a secure facility that will require Plaintiffs to pass through metal detectors to enter such facility.

**PLAINTIFF'S POSITION:**

There should be no limitations on discovery, other than those defined in FRCP 26(b).

      d.      **Hours Permitted for Each Deposition**.

**DEFENDANTS' POSITION:**

- 14 -

4868-0847-6724 v1 [53387-7]

Should any discovery proceed in this case, consistent with limiting discovery to be "proportional to the needs of the case," the Court should limit any deposition to four (4) hours, and should not permit any deponent to be required to sit for more than one (1) deposition absent a showing of cause. Moreover, because Mr. Stuart has previously threatened to kill certain Defendants, violently attack other Defendants, and blow up City property, Defendants request that any deposition discovery take place in a secure facility that will require Plaintiffs to pass through metal detectors to enter such facility.

**PLAINTIFF'S POSITION:**

Plaintiff requests that the length of depositions be seven (7) hours per FRCP 30(d). Plaintiff also requests that the Court allow him to split time for depositions for Lane, Washburn, , Scott, Santaella, Cleary and the city of Scottsdale into two depositions of 4 hours and 3 hours

13. **Proposed Specific Dates**.

    a.   Deadline for Fact Discovery.

**DEFENDANTS' POSITION:**

The Court should not set deadlines unless and until the Court determines if any claims survive.

PLAINTIFF'S POSITION:

 A deadline for fact discovery should be **March 31, 2024**. [this makes no sense]

    b.   **Expert Disclosures**.

**DEFENDANTS' POSITION:**

Due to the significant burdens and expense imposed created by the retention of experts, Defendants propose that the Court toll the establishment of a deadline for expert disclosures until the Court has determined that any claims remain in this matter.

**PLAINTIFF'S POSITION:**

- 15 -

4868-0847-6724 v1 [53387-7]

A deadline for plaintiff's expert disclosure should be **Jan. 15, 2024**. Defendants deadline for responsive expert disclosure should be due **Feb 21, 2024**. Plaintiff's rebuttal expert disclosure should be due **March 30, 2024**.

**Expert Deposition Deadline**.

**DEFENDANTS' POSITION:**

Due to the significant burdens and expense imposed created by the retention of experts, Defendants propose that the Court toll the establishment of a deadline for expert depositions until the Court has determined that any claims remain in this matter.

**PLAINTIFF'S POSITION:**

Deposition of any expert should be concluded by **March 31, 2024.**

c. **Dispositive Motion Deadline**.

**DEFENDANTS' POSITION**:

.      Should any claims survive against any individual Defendant, then the Court should consider a motion directed at the issue of qualified immunity "at the earliest possible stage" of the litigation. Indeed, the Supreme Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (alteration in original) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). That is because qualified immunity gives government officials "a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery." *Id.* (internal quotation marks omitted) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 308, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)). The Court should then set a separate deadline for any additional dispositive motions for thirty (30) days after the discovery deadline.

**PLAINTIFF'S POSITION:**

4868-0847-6724 v1 [53387-7]

A deadline for dispositive motions, should be **May 15, 2024**, unless motions to compel are pending and unresolved.

**Deadline for Face-to-Face Good Faith Settlement Talks**.

### DEFENDANTS' POSITION

Defendants propose that the Court toll the establishment of a deadline for settlement discussions until after the Court has ruled on qualified immunity motions.

### PLAINTIFF'S POSITION:

A settlement deadline should be thirty days before the date set for trial.

14. **Whether a Jury Trial has Been Requested**. Plaintiffs requested a jury trial.

15. **Estimated Length of Trial**. Defendants do not believe any trial length can be estimated given Plaintiffs' refusal to comply with the Court's Order (Doc. 35). Plaintiff asserts that trial will require ten (10) court days.

16. **Prospects for Settlement**. The defendants do not believe that plaintiffs are realistically evaluating the merits of their claims, the risk of loss, or any other matter that would inform the prospects for a rational or reasonable settlement. A perfect illustration of this fact is "Plaintiff's position" set forth below.

### PLAINTIFF'S POSITION:

Plaintiff has made an offer to resolve all litigation against the City and these defendants for **$700,000**, plus the extinguishment of the judgments the City holds only against Mark Stuart's sole and separate property. Plaintiff has at least $1 million in provable damages for this case and case 2-17-cv-01848-djh-jzb. Defendants are not realistic about their prospects of successfully defending this case. Punitive damages against Lane and Washburn, to support the public interest in free speech and the prevention of unlawful official conduct, will almost certainly exceed $1 million. Like *Sundquist v. Bank of America, N.A.*, 580 B.R. 536 (Bankr. E.D. Cal. 2018), the punitive damages would go to public interest organizations like the ACLU

and the Institute for Justice to help combat and stop future civil rights violations by wealthy corporate defendants.

    RESPECTFULLY SUBMITTED this 11th day of September, 2023.

                              DICKINSON WRIGHT, PLLC

                    By: */s/ Scot L. Claus*
                         Scot L. Claus
                         Vail C. Cloar
                         Holly M. Zoe
                         1850 N. Central Avenue, Suite 1400
                         Phoenix, Arizona 85004
                         *Attorneys for Defendants*

                    By: */s/ Mark Stuart /s/ Virginia Stuart*

                         Mark Stuart
                         Virginia Stuart
                         *Plaintiffs*

4868-0847-6724 v1 [53387-7]

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2022, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

By: */s/ Sheila Rath*

- 19 -

4868-0847-6724 v1 [53387-7]