**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark E Stuart, et al., | No. CV-21-01917-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Scottsdale, et al., | |
| Defendants. | |

In its February 13, 2024, Order (Doc. 57), the Court accepted and adopted United States Magistrate John Z. Boyle's Report and Recommendation (Doc. 53) to grant in part and deny in part Defendants' Motion to Strike Plaintiffs Mark and Virginia Stuart's Second Amended Complaint (Doc. 41) ("SAC"). In doing so, the Court struck Counts Seven and Eight[1] of the SAC but allowed Counts One through Six to move forward. (*See generally* Doc. 57). The Court found it improper to strike Counts One through Six under Federal Rule of Civil Procedure Rule 12(f) because to do so would necessarily require a determination that they are barred by claim preclusion without adjudicating on the merits. (*Id.* at 5). Defendants have since filed a Motion to Dismiss (Doc. 58)[2] under Rules 12(b)(1)

---

[1] In their SAC, Plaintiffs inconsistently refer to their Counts by name, e.g., Count One, and by number, e.g., Count I. For clarity, the Court will refer to their Counts by name.

[2] The matter is fully briefed. Plaintiffs filed a response (Doc. 68) and Defendants filed a Reply (Doc. 70). The parties requested oral argument on the Motion. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision. Therefore, the Court will deny the requests for oral argument. *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

and 12(b)(6)[3] asserting (1) Plaintiff Virginia Stuart lacks standing to bring claims for constitutional harms allegedly suffered by her husband; and (2) Mr. Stuart's claims should be dismissed for lack of jurisdiction and failure to state a claim under the *Rooker-Feldman* doctrine,[4] the *Heck* doctrine,[5] *res judicata* principles, the qualified immunity doctrine, and/or the absolute immunity doctrine.  For the following reasons, the Court will grant Defendants' Motion as to Counts One, Two, Four, Five, and Six, but deny it as to Count Three.

## I.    Background

Plaintiffs are Mark Stuart ("Mr. Stuart") and his wife, Virginia Stuart ("Mrs. Stuart") (collectively "Plaintiffs").  Defendants are the City of Scottsdale ("the City"); Former Scottsdale Mayor Lane ("Mayor Lane"); Scottsdale City Councilmembers Littlefield, Whitehead, Milhaven, Caputi, Janik, and Durham (together "the City Councilmembers"); Current Scottsdale Mayor Ortega ("Mayor Ortega"); Scottsdale City Manager Thompson ("City Manager Thompson"); Former Scottsdale City Attorney Washburn ("Attorney Washburn"); Current Scottsdale City Attorney Scott ("Attorney Scott"); Scottsdale Assistant City Attorney Santaella ("Attorney Santaella"); Former Scottsdale Police Chief Rodbell ("Police Chief Rodbell"); and Scottsdale Police Officers Cleary ("Officer Cleary"), Glenn ("Officer Glenn"), and Randall ("Officer Randall") (collectively "Defendants").  (*See generally* Doc. 36). This is Mr. Stuart's fourth lawsuit in this district.[6]  The present matter concerns alleged constitutional violations under 42 U.S.C § 1983 ("Section 1983")[7] and malicious prosecution claims under state and federal

---

[3] Unless where otherwise noted, all Rule references are to the Federal Rules of Civil Procedure.

[4] The *Rooker-Feldman* doctrine originates from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[5] The *Heck* doctrine originates form *Heck v. Humphrey*, 512 U.S. 477 (1994).

[6] *See Stuart v. City of Scottsdale*, No. 2:17-cv-01848-DJH (D. Ariz 2017);  *Stuart v. City of Scottsdale*, No. 2:20-cv-00755-JAT (D. Ariz. 2020);  *Save Our Preserve v. City of Scottsdale* No. 2:18-cv-01047 (D. Ariz 2018).

[7] To state a Section 1983 claim, a plaintiff must allege (1) the violation of a constitutional right that was (2) committed by a person acting under color of state law. *See West v. Atkins*,

1    laws.

2              The Court will first provide an overview of the allegations and claims in the SAC.

3         **A.    Plaintiffs' Allegations**

4              The facts that underpin Plaintiffs' claims span from 2016–2021 and can be grouped

5    into three events: (1) the prosecution for Mr. Stuart's alleged trespass and failure to obey a

6    police officer when he attempted to address the Scottsdale City Council about a ballot

7    measure at the February 7, 2017, City Council meeting; (2) the prosecution for Mr. Stuart's

8    alleged harassment of and threats to harm Scottsdale City officials and; (3) the City's

9    failure to return Plaintiffs' firearms and ammunition that were seized pursuant to his

10   prosecutions.  These events involved various litigations in state and federal court.

11        **1.    The Trespass and Failure to Obey a Police Officer Prosecution**

12             **a.    The 2017 Meeting**

13             In 2017, Mr. Stuart attended various Scottsdale City Council Meetings[8] to advocate

14   for the Save Our Preserve Ballot Initiative ("SOP Initiative") during the open comment

15   periods.  (Doc. 36 at ¶ 24).  He also asked the Arizona State Legislature to launch an "SB

16   1487 investigation" into the City's allegedly improper public expenditures to oppose the

17   SOP Initiative.  (*Id*.)  In their SAC, Plaintiffs allege Attorney Washburn, Mayor Lane, City

18   Manager Thompson, Attorney Scott, and Attorney Santaella designed a policy "to

19   prosecute [Mr.] Stuart for trespassing at public comment without probable cause, solely

20   because of his identity and viewpoint, to retaliate on [Mr.] Stuart for prior First Amendment

21   activities, and to discourage [Mr.] Stuart from speaking about the 'SOP [] Initiative' in

22   future city council meetings."  (*Id*. at ¶ 29).  Among other things, Plaintiffs claim this

23   "Retaliation Policy" included (1) a rule change that granted Mayor Lane unlimited

24   _____

25   487 U.S. 42, 48 (1988).

26   [8] The Court is taking judicial notice of the Scottsdale City Council Meeting Video Archives under Federal Rule of Evidence 201, as the videos constitute information from a government website whose authenticity is beyond dispute. *See Daniels Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).  *See also* 2017 City Council Meeting Video Archives, City of Scottsdale, https://www.scottsdaleaz.gov/scottsdale-video-network/council-video-archives/2017-archives (last visited July 24, 2024).

discretion to censor Mr. Stuart's speech during public comment periods, which could eventually be used as a pretext for Mr. Stuart's arrest; and (2) instructions to City police officers to monitor Mr. Stuart's attendance at the City Council Meetings.  (*Id.* at ¶ 27, 31–33).

This policy was allegedly implemented at the February 7, 2017, City Council Meeting.  *Archived Video of February 07, 2017*, City Council Meeting, at 22:30–26:07, https://scottsdale.granicus.com/player/clip/7853?view_id=106&redirect=true&h=4ac9d6 393cb0f0e5e187305654cdd222 (last visited July 24, 2024) ("2017 Meeting"); (Doc. 36. at ¶¶ 25–34, 37–40).  As Mr. Stuart tried to give his SOP Initiative presentation (Doc. 36-2) during public comment, Mayor Lane reminded him that, to the extent he intended to speak about the SOP Initiative, he "had been advised that state law as it relates to open meetings laws and . . . the use of city taxpayer funds in influencing an election one way or the other prohibit you from advertising or soliciting votes for a petition that's meant to be on the ballot."  2017 Meeting at 23:00–23:32.  The state laws Mayor Lane was referring to were A.R.S. § 38-431 .01(I)[9] (the "Open Meeting Law") and A.R.S. § 9-500.14.[10]  Mr. Stuart insisted, over and over again while interrupting Mayor Lane, that he had a right to use City resources and that Mayor Lane was preventing him from speaking freely.  2017 Meeting at 24:03–25:27.  Mayor Lane then asked Scottsdale police officers to escort Mr. Stuart out of the meeting.  *Id.* at 25:58–26:07.  When Mr. Stuart refused to sit down, Officers Cleary and Glenn arrested him at the podium for trespass.  *Id.*; (Doc. 58-1 at 17–22); (Doc. 36. at ¶¶ 25–34, 37–40).  Mr. Stuart was also subsequently cited for failing to obey a police officer when he refused to sit down on a bench outside of the 2017 Meeting so that the

---

[9] A.R.S. § 38-431.01(I) states, relevant in part, that "[a] public body may make an open call to the public during a public meeting, subject to reasonable time, place and manner restrictions, to allow individuals to address the public body on *any issue within the jurisdiction of the public body*."  A.R.S. § 38-431.01(I).

[10] A.R.S. § 9-500.14 states that "[a] city or town shall not spend or use its resources, including the use or expenditure of monies, accounts, credit, facilities, vehicles, postage, telecommunications, computer hardware and software, web pages, personnel, equipment, materials, buildings or any other thing of value of the city or town, for the purpose of influencing the outcomes of elections."  A.R.S. § 9-500.14(A).

officers could issue him a citation for trespassing.  (Docs. 58-1 at 17–22; 58-1 at 7, 13).

        **b.**        **The Trespass and Failure to Obey a Police Officer Proceedings[11]**

Non-party Scottsdale prosecutor Caron Close ("Prosecutor Close") prosecuted Mr. Stuart based on the events that transpired at the 2017 Meeting for (1) criminal trespassing under A.R.S. § 13-1503A, a Class 2 Misdemeanor, and (2) and failing to obey a police officer under Scottsdale City Code ("S.C.C.") § 19-13, a Class 1 Misdemeanor. *Arizona v. Stuart*, No. M-0751-SC-2017003568 (Scottsdale City Ct. Feb. 16, 2017) (the "Trespass and Failure to Obey Charges"); (Doc. 36 at ¶ 55).  On November 11, 2019, City of Phoenix Judge Sampanes issued a pre-trial Release Order that *inter alia* prevented Mr. Stuart from possessing firearms during the pendency of the Trespass and Failure to Obey Proceedings.   Release Order, *Arizona v. Stuart*, No. M-0751-SC-2017003568 (Scottsdale City Ct. Nov. 18, 2019); (Doc. 58-1 at 24–25) (the "2019 Release Order"). Judge Sampanes then held a bench trial in February 2020 and found Mr. Stuart not guilty on the criminal trespass charge,  but guilty for failing to obey a police officer.  Judgment and Sentence, *Arizona v. Stuart*, No. M-0751-SC-2017003568 (Scottsdale City Ct. Feb. 10, 2020) ("State Court Trespass and Failure to Obey Judgment"); (Doc. 36 at ¶ 56). Judge Sampanes denied Mr. Stuart's subsequent motion to vacate the State Court Trespass and Failure to Obey Judgment.   Minute Entry, *Arizona v. Stuart*, No. M-0751-SC-2017003568 (Scottsdale City Ct. April 22, 2020); (Doc. 36-1).

Mr. Stuart appealed Judge Sampanes' Judgment and Sentence to the Superior Court

---

[11] This Court is taking judicial notice of the pleadings and orders in Mr. Stuart's Arizona state court criminal proceedings regarding his arrest and charge for criminal trespass and failure to obey a police officer at the 2017 Meeting.  *See PageMasters, Inc. v. Autodesk, Inc.*, 2009WL 825810, at *2 (D. Ariz. 2009) ("Pleadings and orders in other actions are matters of public record, and hence properly the subject of judicial notice.") (citing, inter alia, Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (taking judicial notice, as a matter of public record, "pleadings, memoranda, expert reports, etc., from [earlier] litigation[,]" which were thus "readily verifiable")); see also Fed. R. Evid. 201(c) (courts "must take judicial notice if a party requests it and the court is supplied with the necessary information"); see also Fed. R. Evid. 201(b) (courts may take judicial notice of facts "generally known within the trial court's territorial jurisdiction" or facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

of Arizona for Maricopa County; Superior Court Judge Douglas Gerlach affirmed the decision.  Record Appeal Ruling / Remand, *Arizona v. Stuart*, No. LC2020-000239-001 DT (Maricopa Cnty. Super. Ct. Nov. 13, 2020) ("Trespass and Failure to Obey Appeal"); (*see also* Doc. 58-1 at 27–52).  Mr. Stuart appealed this decision to the Court of Appeals of Arizona, which again affirmed. *Arizona v. Stuart*, 2021 WL 5571772 (Ariz. Ct. App. Nov. 30, 2021).  Mr. Stuart's petition for review by the Arizona State Supreme Court was denied. *Arizona v. Stuart*, No. 1 CA-CR 20-0620, 2021 WL 5571772 (Ariz. Ct. App. Nov. 30, 2021) *review denied* (June 3, 2022).  Last, Mr. Stuart filed a Petition for Writ of Certiorari with the United States Supreme Court for review, which was denied on January 9, 2023. *Stuart v. Arizona*, 143 S. Ct. 573 (2023); (Doc. 36 at ¶ 55).  Thus, the State Court Trespass and Failure to Obey Judgment convicting Mr. Stuart for failing to obey a police officer under S.C.C. § 19-13 became final on January 10, 2023.

These background facts are relevant to the present matter because Plaintiffs allege in the SAC that Attorney Washburn, Mayor Lane, and Attorney Santaella, Officer Cleary, and Officer Glenn induced Prosecutor Close to pursue the Trespass and Failure to Obey Charges against Mr. Stuart as part of their Retaliation Policy.  (Doc. 36 at ¶¶ 57–66).  Plaintiffs further allege Prosecutor Close followed instructions to destroy exculpatory evidence during the Trespass and Failure to Obey Proceedings that "would have revealed that Cleary, Glenn, Santaella, and Randall knew they were unlawfully arresting Stuart for trespassing, and that these defendants' had pre-planned Stuart's arrest on Feb. 7, 2017." (*Id*. at ¶ 129).  The Trespass and Failure to Obey Charges and subsequent prosecution allegedly resulted in legal bills that were paid with Plaintiffs' community property, physical and mental injuries suffered by Mr. Stuart, and extreme emotional distress collectively suffered by Plaintiffs.  (*Id*. at ¶ 63–66, 137).

/ / /

/ / /

/ / /

1

2.      **The Threats Prosecution** [12]

2

a.      **Mr. Stuart's Statements While Hospitalized**

3

Mr. Stuart was hospitalized in November 2019 for an "emergency hypertensive

4

crisis." (*Id.* at ¶ 78). Mr. Stuart was evaluated by a psychiatric nurse when treating

5

physicians became concerned that he was "bi-polar" or "manic." (*Id.* at ¶¶ 79–81). Based

6

on Mr. Stuart's statements and responses, the psychiatric nurse determined he was

7

"psychotic, delusional, manic and possibly schizophrenic" and called Scottsdale police

8

upon concluding he "was a danger to himself and others." (*Id.* at ¶ 83). Scottsdale police

9

officers completed an investigation report recording the incident. (Doc. 68-2 at 2–6).

10

"Among other things, [Mr. Stuart] stated council members had 'caused him to go

11

bankrupt,' he wanted to 'shoot them all,' and 'he owned guns at home,' repeating several

12

times that 'he had thought about resorting to violence' and that a promise to his wife was

13

the 'only thing preventing him from carrying out his plan.' " *City of Scottsdale v. Stuart*,

14

2021 WL 4958841, *1 (Ariz. Ct. App. Oct. 26, 2021) (recounting Mr. Stuart's involuntary

15

psychiatric hospitalization); (*see also* Doc. 68-2 at 4, 6).

16

b.      **The Threats Charges**

17

In December 2019, non-party Scottsdale prosecutor Shawn Fuller

18

("Prosecutor Fuller") charged Mr. Stuart with two counts under A.R.S. 13-1202(A)(1) (the

19

"Arizona Threats Statute") [13] for making threats to harm Mayor Lane and the City Council

20

in the presence of a police officer. Criminal Complaint #20190863, *Arizona v. Stuart*, No.

21

M-0751-CR-2019024299 (Scottsdale City Ct. Dec. 2, 2019) ("Threats Charges"); (Doc.

22

36-3); (Doc. 36 at ¶¶ 88–90). The 2019 Release Order in place during the Trespass and

23

Failure to Obey Proceedings that prohibited Mr. Stuart from possessing firearms was

24

25

26

---

[12] This Court is taking judicial notice of the pleadings and orders in Mr. Stuart's Arizona state court criminal proceedings regarding the threatening statements he made while hospitalized in November 2019, *Arizona v. Stuart*, No. M-0751-CR-2019024299 (Scottsdale City Ct. Dec. 2, 2019). *See PageMasters*, 2009 WL 825810, at *2; *see also* Fed. R. Evid. 201(c); *see also* Fed. R. Evid. 201(b).

27

28

[13] A.R.S. 13-1202(A)(1) states "[a] person commits threatening or intimidating if the person threatens or intimidates by word or conduct [t]o cause physical injury to another person or serious damage to the property of another[.]" A.R.S. 13-1202(A)(1).

1   continued during the Threats Proceedings.  (Doc. 114 at ¶ 114–15).  On May 6, 2021, the

2   Threats Charges were dismissed without prejudice in exchange for Mr. Stuart's

3   participation in a pre-trial diversion program.  (Docs. 36 at ¶ 69; 58 at 7).  The 2019 Release

4   Order concurrently expired.  (Doc. 36 at ¶ 116). On November 7, 2021, the dismissal

5   became final.  (Doc. 36 at ¶ 70).

6          In their SAC, Plaintiffs claim Prosecutor Fuller lacked probable cause and initiated

7   the Threats Charges solely under instructions by Attorney Scott, Mayor Lane,

8   Attorney Santaella, and City Council members to retaliate against Mr. Stuart.

9   (*Id.* at ¶¶ 88–91, 99–107).

10                    **c.      The Related Threats Injunction[14]**

11          Prior to Prosecutor Fuller bringing the Threats Charges against Mr. Stuart, the City

12   obtained an *ex parte* injunction from the Maricopa County Superior Court following

13   Mr. Stuart's statements while hospitalized November 2019 that:

14          (1)      "[prohibited Mr. Stuart from] going to the residences or private
15                   workplaces of any City Council Members (Protected Persons)";

16          (2)      "[prohibited Mr. Stuart from] going to City Hall 'except during
17                   scheduled City Council/public meetings posted and open to the
                     public,' where he would be subject to a search for weapons' ";
18

19          (3)      "limited [Mr. Stuart's] physical movements at City Council meetings
                     (including specifying where he could sit)";

20          (4)      "required that [Mr. Stuart's] communications with the City Council
21                   be in writing"; and

22          (5)      "provided that [Mr.] Stuart could contact the City or Protected Persons
23                   through their attorneys or legal process in writing or electronically."

24   *City of Scottsdale v. Stuart*, 2021 WL 4958841, at *1 (Ariz. Ct. App. Oct. 26, 2021) (the

25   _____

26   [14] This Court is taking judicial notice of the pleadings and orders in Mr. Stuart's closely
     related civil action—namely, the Arizona state court case in which the City obtained an
27   injunction against Mr. Stuart due to threatening statements he made while hospitalized in
     November 2019, *City of Scottsdale v. Stuart*, No. CV2017-013915 (Maricopa Cnty. Super.
28   Ct.) and *City of Scottsdale v. Stuart*, 2021 WL 4958841, at *1 (Ariz. Ct. App. Oct. 26,
     2021). *See PageMasters*, 2009 WL 825810, at *2; *see also* Fed. R. Evid. 201(c); *see also*
     Fed. R. Evid. 201(b).

"Threats Injunction").  The Threats Injunction went into effect on November 14, 2019.  *Id.*

Mr. Stuart challenged the sufficiency of the Threats injunction in May 2020.  *Id.* at *2.  The Maricopa County Superior Court held three evidentiary hearings on September 25, October 28, and November 12, 2020, and "found by a preponderance of the evidence that Stuart committed acts of harassment or may commit an act of harassment in the future and affirmed, but did not extend, the injunction."  *Id.*  Accordingly, the Threats Injunction expired on November 13, 2020.  *Id.*

Mr. Stuart appealed the order affirming the Threats Injunction to the Arizona Court of Appeals.  *City of Scottsdale v. Stuart*, 2021 WL 4958841 (Ariz. Ct. App. Oct. 26, 2021) (the "Threats Appeal").  The appellate court denied Mr. Stuart relief because he failed to show any violation of his First, Fourth, or Fourteenth Amendment rights, and he failed to show the Arizona Threats Statute was unconstitutionally vague or overboard.  The state appellate court concluded that the superior court properly "weighed the evidence presented and decided that the evidence presented a true threat sufficient to affirm the injunction[,]" and "Mr. Stuart has shown no error in that determination."  *Id.* at *3.

### 3. The Gun Seizure

On November 8, 2019, Plaintiffs had turned over their guns and ammunition to the Scottsdale City police on the advice of the psychiatric personnel that evaluated Mr. Stuart while he was hospitalized.  (*Id.* at ¶ 113).  The Scottsdale City police retained possession of Plaintiffs' property pursuant to the 2019 Release Order.  (Doc. 36 at ¶¶ 114–116).  Although that Order expired on May 6, 2021—the date on which Mr. Stuart's Threats Charges were dismissed—Plaintiffs say in their SAC that the City allegedly failed to return Mr. Stuart's guns and ammunition for another ninety days.  (*Id.* at ¶¶ 126).  Plaintiffs claim this seizure "was subjectively and objectively unreasonable and violated Plaintiffs' clearly established First, Fourth and Fourteenth Amendment rights."  (*Id.* at ¶ 136).  These violations allegedly resulted in "various injuries including loss of property and reputation, physical pain and suffering, humiliation, loss of enjoyment of life, loss of consortium and emotional distress."  (*Id.* at ¶ 137).

**B.      Plaintiffs' Counts One Through Six**

On July 27, 2023, Plaintiffs filed the SAC against Defendants for claims arising under Section 1983 and state and federal laws prohibiting malicious prosecutions.  The following six Counts remain in this case:

Count One is a Section 1983 claim for violation of Mr. Stuart's Fourteenth Amendment rights under the equal protection and procedural due process clauses. (*Id*. at ¶¶ 140–149).  When liberally construing Count One, the Court gleans three theories of violations, which the Court will hereafter refer to as Count One(a), (b), and (c), respectively:

> (a)      the City, Mayor Lane, Attorney Washburn, Attorney Santaella, Attorney Scott, Officer Cleary, and Officer Glenn violated Mr. Stuart's procedural due process rights in the Trespass and Failure to Obey Proceedings by refusing to provide and/or destroying exculpatory and *Brady* evidence (*id*. at ¶¶ 141–42);

> (b)      the City and Attorney Scott violated Mr. Stuart's equal protection rights when they selectively prosecuted him for Threats Charges based on his identity, political beliefs, and protected speech (*id*. at ¶ 143);

> (c)      Attorney Scott and the City violated Mr. Stuart's procedural due process rights by enforcing the Arizona Threats Statute against him in an unconstitutionally vague and unforeseeable manner (*id*. at ¶ 144); and

Count Two is a federal malicious prosecution claim.  (*Id*. at ¶¶ 150–164).  Plaintiffs first allege the City, Mayor Lane, Attorney Washburn, Attorney Santaella, Attorney Scott, and Officers Cleary, Glenn, and Randall carried out the Trespass and Failure to Obey Charges without probable cause and to retaliate against Mr. Stuart for exercise of his free speech rights at the 2017 Meeting ("Count Two(a)").  (*Id*. at ¶¶ 151–53).  Plaintiffs further claim the City, Mayor Lane, and Attorney Scott carried out the Threats Charges without probable cause and to retaliate against Mr. Stuart for initiating the civil action *Stuart v. City of Scottsdale*, No. 2:17-cv-01848-DJH (D. Ariz 2017) in this district and engaging in protective speech to psychiatric personnel ("Count Two(b)").  (*Id*. at ¶¶ 155–162).

Count Three claims the City, Attorney Scott, Attorney Santaella, and City Manager Thompson violated Plaintiffs' Fourth Amendment rights when they unreasonably seized their guns and ammunition for ninety days. (*Id.* at ¶¶ 165–178.)

Count Four is a Section 1983 claim that the City maintained unlawful policies in violation of *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978) ("*Monell*"). (Doc. 36 at ¶¶ 179–215). When liberally construing Count Four, the Court gleans four theories of *Monell* violations, which the Court will hereafter refer to as Count Four(a), (b), (c), and (d), respectively:

(a) the City ratified Mayor Lane and Attorney Washburn's actions as final policy makers when they carried out the Trespass and Failure to Obey Charges against Mr. Stuart as part of the City's "speech suppression policies" and that a civil citation received on October 22, 2016, is another example of Defendants' speech suppression policies (*id.* at ¶¶ 184, 187–190, 193).

(b) the City ratified Mayor Lane and Attorney Scott's actions as final policy makers when they carried out the Threats Charges against Mr. Stuart as part of the City's "speech suppression policies" (*id.* at ¶¶ 185, 187, 191–92);

(c) the City ratified Attorneys Washburn and Scott's actions as final policy makers when they denied Mr. Stuart access to exculpatory evidence during the Trespass and Failure to Obey Proceedings as part of the City's policies for "due process violation policies" (*id.* at ¶¶ 186, 194); and

(d) the City, through Attorneys Washburn and Scott, have "trained and encouraged their subordinates to violate the equal protection and due process rights of others by refusing to recognize and implement well-settled state and federal controlling law regarding statutory and constitutional right" as exemplified by the continued seizure of Plaintiffs' property  (*id.* at ¶¶ 206, 200).

Count Five is a Section 1983 claim for violation of Mr. Stuart's free speech rights under the First Amendment. (*Id.* at ¶¶ 216–25). Plaintiffs allege the City, Mayor Lane, and Attorney Scott infringed on and retaliated against his exercise of protected speech to psychiatric personnel by carrying out the Threats Charges against him without probable

cause ("Count Five(a)").  (*Id.* at ¶ 217).  Plaintiffs further claim the City, Attorney Scott, City Manager Thompson, and City Council members "threaten[ed] to enforce the undefined jurisdictional requirements for speech at Public Comment against Stuart about October 14, 2021" which "chilled Stuart's speech, and Stuart did not attend and speak at city council meetings on Oct. 19, 2021, Nov. 9, 2021, and Nov. 16, 2021." ("Count Five(b)")  (*Id.* at ¶ 223).

Count Six is an Arizona state malicious prosecution claim.  (*Id.* at ¶¶ 226–32).  Plaintiffs allege the City, Attorney Scott, and Mayer Lane carried out the Threats Charges against him to hinder his ability to present a defense in the Trespassing Prosecution, damage his reputation, deplete his financial assets, and retaliate against his prior free speech activities.  (*Id.* at ¶ 230).

Defendants now move to dismiss the SAC in its entirety under Rules 12(b)(1) and 12(b)(6).  (*See generally* Doc. 58).

## II.    Legal Standards

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject matter jurisdiction, while a motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint.  *Compare* Fed. R. Civ. P. 12(b)(1) *with* Fed. R. Civ. P. 12(b)(1); *see also Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  When both Rules are invoked, as here, "a district court must first determine whether it has jurisdiction before it can decide whether a complaint states a claim."  *Moore v. Maricopa Cty. Sheriff's Office*, 657 F.3d 890, 895 (9th Cir. 2011) (citing *Bell v. Hood*, 327 U.S. 678, 682, (1946) ("[I]t is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law . . . [that] must be decided after and not before the court has assumed jurisdiction over the controversy.").

### A.    Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) jurisdictional attacks may be facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, "the challenger asserts

1    that the allegations contained in a complaint are insufficient on their face to invoke federal

2    jurisdiction." *Id*.  In these scenarios, the nonmoving party's allegations are taken as true

3    and "all inferences are to be drawn in [its] favor." *Wolfe v. Strankman*, 392 F.3d 358, 362

4    (9th Cir. 2004).  By contrast, a factual attack "disputes the truth of the allegations that, by

5    themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039.

6    Factual attacks may rely on extrinsic evidence that disputes the truth of the allegations of

7    the complaint that would otherwise invoke federal jurisdiction. *Id*.

8        **B.    Federal Rules of Civil Procedure 8 and 12(b)(6)**

9        A complaint must contain a "short and plain statement of the claim showing that the

10   pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "All that is required are sufficient

11   allegations to put defendants fairly on notice of the claims against them." *McKeever v.*

12   *Block*, 932 F.2d 795, 798 (9th Cir. 1991).  Rule 8, however, requires "more than an

13   unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S.

14   662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A

15   complaint need not contain detailed factual allegations to avoid a Rule 12(b)(6) dismissal;

16   it simply must plead "enough facts to state a claim to relief that is plausible on its face."

17   *Twombly*, 550 U.S. at 570.  "A complaint has facial plausibility when the plaintiff pleads

18   factual content that allows the court to draw the reasonable inference that the defendant is

19   liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at

20   556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

21   more than a sheer possibility that defendant has acted unlawfully." *Id*. (citation omitted).

22   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

23   'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*

24   (citation omitted).  A complaint that provides "labels and conclusions" or "a formulaic

25   recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Nor

26   will a complaint suffice if it presents nothing more than "naked assertions" without "further

27   factual enhancement." *Id.* at 557.  The Court is mindful that it must "construe pro se filings

28   liberally when evaluating them under *Iqbal*." *Jackson v. Barnes*, 749 F.3d 755, 763–64

- 13 -

(9th Cir. 2014) (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)).

When ruling on a motion to dismiss, the court accepts all factual allegations in the complaint as true and views the pleadings in light most favorable to the nonmoving party. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). That rule does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678. When considering a motion to dismiss, a district court "consider[s] only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)). A court may, however, "consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz*, 476 F.3d at 763 (citations omitted). Under this "incorporation by reference" doctrine, district courts "may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (quoting *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)). "The court otherwise may not consider matters outside the complaint[,]" including new allegations in the motion or exhibits attached thereto. *Jacobsen v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1204 (C.D. Cal. 2004) (citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001)).

## III.   Discussion

Defendants argue the Court should dismiss the SAC in its entirety on multiple, and often overlapping grounds, including: Mrs. Stuart lacks standing to bring claims for harms that are personal to Mr. Stuart; the *Rooker-Feldman* doctrine bars Plaintiffs from bringing de facto appeals of the judgments underlying the Trespass and Failure to Obey Proceedings and related to the Threats Charges; the *Heck* doctrine bars Plaintiffs from bringing Section 1983 claims that challenge the outcomes of the Trespass and Failure to Obey and Threats Charges; Plaintiffs cannot re-litigate the issues and claims underlying his First Amendment and *Monell* causes of actions under principles of *res judicata*; and Plaintiffs have otherwise

failed to state plausible claims under Rule 12(b)(6).  (*See generally* Doc. 58).  The Court will first address whether Mrs. Stuart has standing before turning to the rest of Defendants' arguments.  *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc) ("Standing is a threshold matter central to our subject matter jurisdiction. We must assure ourselves that the constitutional standing requirements are satisfied before proceeding to the merits.").

## A. Mrs. Stuart's Standing

Defendants argue Mrs. Stuart lacks standing because there are no allegations that Defendants had any contact with her and all purported harms are personal to Mr. Stuart. (Doc. 58 at 7).  Plaintiffs oppose, arguing Mrs. Stuart has standing to bring a Fourth Amendment claim for unreasonable seizure of her and Mr. Stuart's community property. (Doc. 68 at 7).  The Court agrees with Plaintiffs that Mrs. Stuart has standing under Count Three.  But Mrs. Stuart has neither third party standing nor Article III standing to bring Counts One, Two, Four, Five, and Six.

Count Three alleges the City, Attorney Scott, Attorney Santaella, and City Manager Thompson violated Plaintiffs' Fourth Amendment rights when they unreasonably seized their guns and ammunition for ninety days.  (Doc. 36. at ¶¶ 165–78).  "To establish standing to challenge governmental intrusions under the Fourth Amendment, an individual must demonstrate their reasonable expectation of privacy in a place searched, or meaningful interference with their possessory interest in property seized."  *United States v. Baker*, 58 F.4th 1109 (9th Cir. 2023) (citing *United States v. Singleton*, 987 F.2d 1444, 1447 (9th Cir. 1993)).

Mrs. Stuart has standing to bring Count Three because she is alleged to have a community property interest in the property seized.  *See* A.R.S. § 25-211 ("All property acquired by either husband or wife during the marriage is the community property of the husband and wife[.]").  But apart from Count Three, the SAC claims violations of Mr. Stuart's constitutional rights only.  "Parties ordinarily are not permitted to assert constitutional rights other than their own."  *Wasson v. Sonoma Cnty. Junior Coll.*, 203 F.3d

659, 663 (9th Cir. 2000) (citing *NAACP v. Alabama*, 357 U.S. 449, 459 (1958)).  However, "a litigant can maintain 'third party' standing [where] she satisfies a three-prong test: (1) the litigant must have suffered an 'injury in fact,' (2) the litigant must have a close relation to the third party, and (3) there must exist some hindrance to the third party's ability to protect his or her own interests."   *Id.*   It is undisputed that Mrs. Stuart has a close relationship to Mr. Stuart as his wife.  At issue are the first and third prongs.

Mrs. Stuart alleges two types of injury in fact: the loss of community property used to pay Mr. Stuart's legal fees; and physical, psychological, and emotional distress..  (Doc. 36 at ¶ 63–66, 113–26, 137).  Mrs. Stuart's claimed financial loss due to Mr. Stuart's legal fees cannot support third-party standing because Mr. Stuart incurred payment obligations when he made illegal threats and failed to obey a city police officer.  Under A.R.S. § 25-214, both "spouses have equal management, control and disposition rights over their community property and have equal power to bind the community."  A.R.S. § 25-214(B).  When a spouse incurs "a debt or obligation the spouses shall be sued jointly and the debt or obligation shall be satisfied: first, from the community property, and second, from the separate property of the spouse contracting the debt or obligation."  A.R.S. § 25-215.  Therefore, loss of the community property at issue was imposed by state law and thus cannot be an injury in fact.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (an "injury in fact" refers to "an invasion of a *legally protected interest*") (emphasis added).  And even assuming that Mrs. Stuart's claim for physical, psychological, and emotional distress is a sufficient injury for standing purposes, Ms. Stuart cannot further show some hindrance exists preventing Mr. Stuart from protecting his own interests as a third party under prong three.  *See Wasson*, 203 F.3d at 663.  To recover for physical, psychological, and emotional distress, Ms. Stuart would need to independently establish Article III standing, and this she cannot do. "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Martin v. City of Boise*, 920 F.3d 584, 608 (9th Cir. 2019) (citation omitted).  Although Mrs. Stuart claims injuries and damages related to

Defendants' actions against Mr. Stuart, the SAC contains no allegations that suggest a direct causal connection between Defendants' conduct and Mrs. Stuart's alleged injuries. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) (noting that in a Section 1983 claim, "proximate cause exists where 'an act or omission played a substantial part in bringing about or actually causing the injury or damage to plaintiffs' "); *Adams v. Estrada*, No. 2 CA-CV 2013-0074, 2014 WL 265660, at *2 (Ariz. Ct. App. Jan. 23, 2014) ("The tort of malicious prosecution requires that the plaintiff establish the defendant, as complaining witness, instituted or continued criminal proceedings against the plaintiff, which terminated in the plaintiff's favor, without probable cause and with malice."). Therefore, the Court finds Mrs. Stuart fails to meet the Article III standing test and will dismiss her from Counts One, Two, Four, Five, and Six. *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) ("A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit.").

**B.    The *Rooker-Feldman* doctrine**

Defendants argue the *Rooker-Feldman* doctrine bars Mr. Stuart from bringing certain challenges related to the Threats and Trespass and Failure to Obey Proceedings. *Rooker-Feldman* "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004); *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012) ("The doctrine bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the 'de facto equivalent' of such an appeal."). Therefore, if a party is disappointed with a state court judgment, that party may not appeal to federal district court, even if the issue would otherwise be within federal district court jurisdiction based upon a federal question or diversity of citizenship. *See Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003). The reasons underlying this principle is that the United States Supreme Court is the only federal court with jurisdiction to hear direct appeals from a final state court judgment. *Id*. at 1154. "The purpose of the

1   doctrine is to protect state judgments from collateral federal attack."  *Doe & Assocs. Law*

2   *Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001).

3    To determine whether *Rooker-Feldman* applies, federal courts must first consider

4   whether the action was brought as an appeal from an adverse state-court decision.

5   *See Lance v. Dennis*, 546 U.S. 459, 463 (2006); *Exxon Mobil Corp. v. Saudi Basic Indus.*

6   *Corp.*, 544 U.S. 280, 291 (2005).  This is because the doctrine only applies when "the

7   losing party in state court filed suit in federal court after the state proceedings ended."

8   *Exxon Mobil*, 544 U.S. at 291.  Furthermore, "[i]f issues presented in a federal suit are

9   'inextricably intertwined' with issues presented in a forbidden *de facto* appeal from a state

10   court decision, *Rooker-Feldman* dictates that those intertwined issues may not be litigated."

11   *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004) (citing *Feldman*, 460 U.S.

12   at 483 n. 16).  Under the "inextricably intertwined" test, *Rooker-Feldman* bars claims "if

13   the relief requested in the federal action would effectively reverse the state court decision

14   or void its ruling." *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th

15   Cir. 2002) (internal quotations and citation omitted); *see also Pennzoil Co. v. Texaco, Inc.*,

16   481 U.S. 1, 25 (1987).  However, *Rooker-Feldman* does not bar jurisdiction where the

17   federal court plaintiff is simply complaining of a "legal injury caused by an adverse party";

18   it instead bars jurisdiction if the federal plaintiff is complaining of "a legal injury caused

19   by a state court judgment."  *Noel*, 341 F.3d at 1163.

### 1. Counts One(b), One(c), Two(b), Four(b), Five(a), and Six Will be Dismissed Because They Present De Facto Appeals of the Threats Injunction and Threats Appeal

23    Defendants first argue the *Rooker-Feldman* doctrine bars Mr. Stuart from claiming

24   the Threats Charges brought against him were somehow retaliatory or unconstitutional

25   because these claims are a de facto appeal of the state courts' conclusions in the Threats

26   Injunction and Threats Appeal.  (Doc. 58 at 8).

27    The Threats Injunction restrained Mr. Stuart's communications and access to

28   certain Defendants after Mr. Stuart made threatening statements against them while

hospitalized in November 2019.  Defendants say that when the Threats Injunction was affirmed in the Threats Appeal, the state courts settled that he made true threats while hospitalized for purposes of the Arizona Threats Statute.  (Doc. 70 at 6).   Defendants further contend "[t]he notion that Mr. Stuart's constitutional rights were violated when he was prosecuted for making true threats against property and people is irreconcilable with the Arizona Court of Appeal's Ruling upholding the injunction." (*Id.*)  Mr. Stuart opposes, asserting the Threats Injunction is "completely irrelevant" to the Threats Charges and he is not arguing that the state courts erred in those proceedings.  (Doc. 68 at 5, 7).  He further maintains that no court has ruled that his alleged statements at issue in the Threats Charges constituted true threats.  (*Id.* at 5).

To start, the Threats Injunction and the Threats Appeal's affirmance certainly constitute state-court decisions that are adverse to Mr. Stuart.  And, Mr. Stuart misconstrues the scope of the those final judgments.  It is clear that certain issues underlying the Threats Injunction and Threats Appeal are inextricably intertwined with Mr. Stuart's challenges to the Threats Charges because all proceedings were based on the statements Mr. Stuart made while hospitalized in November 2019.[15]  *Compare Stuart*, 2021 WL 4958841, at *1 ("In November 2019, Stuart [] threatened City Council members in statements made to a psychiatric nurse practitioner during an involuntary psychiatric hospitalization.") *with* Criminal Complaint #20190863, *Arizona v. Stuart*, No. M-0751-CR-2019024299 (stating "there is probable cause to believe that on or about 11/06/2016, . . . Mark Elliott Stuart threatened or intimidated by word or conduct to cause physical injury to Scottsdale City Mayor William 'Jim Lane' . . . [and] the Scottsdale City Council").

First, the appellate court found the superior court properly weighed the evidence when issuing the Threats Injunction and affirmed the superior court's conclusion that Mr. Stuart's statements were "true threats" under the Arizona Threats Statute that warranted injunctive relief.  *Id.* at *2.  Therefore, Mr. Stuart's federal malicious prosecution

---

[15] The Threats Appeal also discussed threatening statements made by Mr. Stuart in May 2019 to a behavioral health intake counselor.  *Stuart*, 2021 WL 4958841, at *1.

theory under Count Two(b) that the City, Mayor Lane, and Attorney Scott carried out the Threats Charges "without probable cause[16] to believe that Stuart had made a true threat" (Doc. 36 at ¶ 154) constitutes a de facto appeal for the purposes of *Rooker-Feldman* because a finding of no probable cause would effectively reverse the state courts' rulings that Mr. Stuart's statements presented true threats under Arizona criminal law. *See Fontana*, 307 F.3d at 992. Mr. Stuart's claim under Count Five(a) that the City, Mayor Lane, and Attorney Scott retaliated against his First Amendment protected speech to psychiatric personnel by carrying out the Threats Charges against him without probable cause is barred for the same reasons. (*See* Doc. 36 at ¶ 217). Application of *Rooker-Feldman* in this respect further bars Mr. Stuart's state law malicious prosecution theory under Count Six because the existence of probable cause is a complete defense to malicious prosecution claims under both federal and Arizona law. *West v. City of Mesa*, 128 F. Supp. 3d 1233, 1240 (D. Ariz. 2015).

Second, the appellate court affirmed the superior court when it rejected Mr. Stuart's argument that he was being prosecuted under the Arizona Threats Statute due to his protected speech. *Stuart*, 2021 WL 4958841, at *5. The Threats Appeal acknowledged the fact that Mr. Stuart's statements were made in the context of a mental health evaluation. *Id.* at *4. It found the superior court "considered evidence showing the context of [Mr.] Stuart's statements, including his psychiatric state, and still affirmed the injunction" and the superior court was "not required to discredit Stuart's statements based on the setting in which they were made." *Id.* In doing so, the appellate court found that the record did not show the Threats Injunction was issued to retaliate against Mr. Stuart. *Id.* Therefore, Mr. Stuart's theory under Count One(b) that the City and Attorney Scott violated his Fourteenth Amendment rights when they selectively prosecuted him for Threats Charges based on his identity, political beliefs, and protected speech (Doc. 36 at ¶ 143) constitutes a de facto

---

[16] The determination of probable cause is based on the totality of the circumstances and "exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Rodis v. City, Cnty. of San Francisco*, 558 F.3d 964, 969 (9th Cir. 2009) (quoting *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)).

appeal of the Threats Appeal's express conclusion that the proceedings were non-retaliatory.  *Stuart*, 2021 WL 4958841, at *4.  Mr. Stuart's malicious prosecution claim under Count Two(b) that the City, Mayor Lane, and Attorney Scott carried out the Threats Charges to retaliate against Mr. Stuart for engaging in protective speech to psychiatric personnel (Doc. 36 at ¶¶ 155–162) is barred for the same reasons.  Mr. Stuart's First Amendment suppression and retaliation theories under Counts Four(b) and Five(a) are also barred to the extent they relate to the initiation of the Threats Criminal Charges.  (Doc. 36 at ¶¶ 185, 187, 191–92, 217).

The appellate court also ruled that the Arizona Threats Statute was not unconstitutionally vague or overbroad as applied to Mr. Stuart's statements while hospitalized.  *Id*. at *4–5.  Therefore, Mr. Stuart's theory under Count One(c) that Attorney Scott and the City violated Mr. Stuart's procedural due process rights by enforcing the Arizona Threats Statute against him in an unconstitutionally vague and unforeseeable manner (Doc. 36 at ¶ 144) is a de facto appeal in this respect and is *Rooker-Feldman* barred.

In sum, because Counts One(b), One(c), Two(b), Four(b), Five(a), and Six present de facto appeals of the Threats Injunction and Threats Appeal, they are barred under the *Rooker-Feldman* abstention doctrine.

### 2. Counts Two(a) and Four(a) Will be Dismissed Because They Present De Facto Appeals of the State Court Trespass and Failure to Obey Decisions

Defendants also argue the *Rooker-Feldman* doctrine bars Mr. Stuart's retaliation claims related to the Trespass and Failure to Obey Proceedings because such claims are de facto appeals of the state courts' findings that Mr. Stuart's actions at the 2017 Meeting were not constitutionally protected.  (Doc. 58 at 8–9).

It is undisputed that the State Court Trespass and Failure to Obey Judgment and his appeal of that Judgment are adverse state decisions against Mr. Stuart that found him guilty of failing to obey a police officer at the 2017 Meeting.  Mr. Stuart contends the present matter differs from those proceedings because it concerns the subsequent prosecution for

his alleged trespass, not his arrest.  (Doc. 68 at 4).  In Mr. Stuart's opinion, the issue of whether he had a right to present on the SOP Initiative at the 2017 Meeting was never considered by the state courts because the state trial court prevented him from submitting relevant evidence and upheld the City's refusal to provide him with relevant discovery. (*Id*.)  He further maintains he is not alleging that any state court erred.  (*Id*. at 7).

Mr. Stuart is mistaken that this case has no bearing on State Court Trespass and Failure to Obey Judgment and his appeal of that Judgment.    Indeed, both proceedings examined Mr. Stuart's constitutional rights at the 2017 Meeting.  When affirming the State Court Trespass and Failure to Obey Judgment, the appellate court rejected Mr. Stuart's argument that his conviction for failing to obey a police officer was error because the conviction arose from the denial of his constitutional right to speak.  (Doc. 58-1 at 31, 34–40).  The appellate court further settled that Defendants' refusal to allow Mr. Stuart to present during the 2017 Meeting was (1) "driven exclusively the limit that the [Open Meeting Law] imposes"; (2) "was not driven because of a disagreement with the substance of what [Mr.] Stuart wanted to say"; (3) and "was both reasonable and viewpoint-neutral" and thus a lawful restraint on speech.  (*Id*. at 37).  The appellate court ultimately reasoned that "[b]ecause [Mr.] Stuart was not denied a constitutional right to speak, his conduct at the [2017 M]eeting became disruptive, and citizens who disrupt public meetings may be removed without infringing on their constitutional rights."  (*Id*. at 40).

In light of the appellate court's rulings on Mr. Stuart's Trespass and Failure to Obey Judgments, the Court finds that Mr. Stuart's *Monell* claim under Count Four(a) that the City ratified Mayor Lane and Attorney Washburn's actions when they carried out the Trespass and Failure to Obey Charges against Mr. Stuart as part of the City's "speech suppression policies" (Doc. 36 at ¶¶ 184, 187–190) constitute a de facto appeal under *Rooker-Feldman*.  Mr. Stuart's theory essentially asks the Court to nullify the appellate court's holding that he was subject to a lawful restraint on speech when prevented from speaking at the 2017 Meeting.  Count Four(a) is therefore *Rooker-Feldman* barred.

The state appellate court also rejected Mr. Stuart's argument that he was the victim

of a vindictive prosecution—i.e. "prosecutorial action taken to penalize him for invoking his legally protected rights." (Doc. 58-1 at 45 (quoting *State v. Tsosie*, 832 P.2d 700, 702 (Ariz. Ct. App. 1992)). Specifically, the court found no support in the record for Mr. Stuart's assertions that the evidence from trial proved a vindictive motive and declined to second guess the state trial court's determination that Mr. Stuart failed to make a case for prosecutorial vindictiveness. (*Id.*) Therefore, Mr. Stuart's federal malicious prosecution theory under Count Two(a) that the City, Mayor Lane, Attorney Washburn, Attorney Santaella, Attorney Scott, and Officers Cleary, Glenn, and Randall carried out the Trespass and Failure to Obey Charges to retaliate against him for exercise of his free speech rights at the 2017 Meeting (Doc. 36 at ¶¶ 151–53) is barred by *Rooker-Feldman*. To allow it to proceed would require this Court to reconsider the appellate court's holding that Mr. Stuart was not subject to vindictive prosecution in the Trespass and Failure to Obey Proceedings.

In relation to the Trespass and Failure to Obey Proceedings, Counts Four(a) and Two(a) are barred.

### 3. *Rooker-Feldman* Conclusion

In sum, the Court agrees with Defendants that the *Rooker-Feldman* doctrine prevents Mr. Stuart from claiming the Threats Charges was somehow retaliatory, unconstitutional, or procedurally deficient. Mr. Stuart's success on such claims would be premised on findings that the state courts wrongly decided these issues. The Court thus lacks jurisdiction to hear Mr. Stuart's challenges to the Threats Charges under Counts One(b), One (c), Two(b), Four(b), Five(a), and Six. The Court further agrees that the *Rooker-Feldman* doctrine prevents Mr. Stuart from appealing the rulings established in the State Court Trespass and Failure to Obey Judgment and Trespass and Failure to Obey Appeal. The Court thus lacks jurisdiction to hear Mr. Stuart's First Amendment infringement and retaliation claims under Counts Two(a) and Four(a).

Counts Two and Six are thus barred in their entirety under the *Rooker-Feldman* doctrine.

/ / /

1

### C.      The *Heck* doctrine

Defendants next argue the *Heck* doctrine bars Mr. Stuart's Counts One(a), Two(a), Four(a), and Five because they are Section 1983 claims that, if successful, would invalidate the outcomes of the Trespass and Threats Charges.  (Doc. 58 at 9–10).  Mr. Stuart contends *Heck* is inapplicable because he was neither convicted for trespassing nor for making threats.  (Doc. 68 at 8–9).

In *Heck v. Humphrey*, the Supreme Court held that a claim for damages under Section 1983 is barred when success on that claim "would necessarily imply the invalidity of his conviction or sentence."  512 U.S. 477, 487 (1994).  The *Heck* doctrine establishes the following:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id*. at 486–87 (footnote omitted).  So, a Section 1983 claim for damages attributable to an unconstitutional conviction or sentence does not accrue unless that conviction or sentence has been invalidated.  *Id*. at 489–90.

The Court must thus consider whether a judgment in favor of the Plaintiff on the challenged claims would necessarily imply the invalidity of his conviction or sentence.  *Id*. at 487.  "*Heck* says that 'if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.' "  *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (quoting *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir.1996)).  "This requires an inquiry into what a plaintiff would need to prove in order to succeed on his theory of the case, not an inquiry into whether a plaintiff would be able to succeed on the

merits." *Rosales-Martinez v. Palmer*, 753 F.3d 890, 896 (9th Cir. 2014) (citing *Owens v. White*, 342 F.2d 817, 819 (9th Cir. 1965) ("Whether [a] plaintiffs claim has accrued is a question of law . . . [that] does not reach the merits of the claim but instead involves the very existence of the claim itself")). "The Ninth Circuit has extended the *Heck* doctrine to [Section] 1983 claims brought by unincarcerated individuals challenging the validity of the underlying arrest that led to a criminal conviction." *Hunter v. Idaho*, 2020 WL 4340525, at *7 (D. Idaho July 28, 2020) (citing *Smithart*, 79 F.3d at 952 ("There is no question that *Heck* bars [plaintiff's] claims that defendants lacked probable cause to arrest him and brought unfounded criminal charges against him.")).

> **1.    Counts One(a) and Two(a) are Barred by *Heck* Because They Seek to Invalidate Mr. Stuart's Conviction for Failing to Obey a Police Officer in the State Court Trespass and Failure to Obey Judgment**

Mr. Stuart argues his claims regarding the Trespass and Failure to Obey Proceedings have accrued under *Heck* because he was acquitted of trespassing and he is neither challenging nor seeking damages that would overturn his conviction for failing to obey a police officer.  (Doc. 68 at 8).  Defendants argue that even though Mr. Stuart ultimately was found not guilty of trespassing, his challenges to those the Trespass and Failure to Obey Proceedings, including malicious prosecution and destruction of exculpatory evidence under Counts One(a) and Two(a), necessarily challenge his resulting conviction for failing to obey a police officer.  (Docs. 58 at 10; 70 at 6).  The Court agrees with Defendants.  Although Mr. Stuart assures the Court he is not directly challenging his conviction for failing to obey a police officer, *Heck* also applies to Section 1983 claim seeking redress from "harm caused by actions whose unlawfulness would render a conviction or sentence invalid[.]"  512 U.S. at 486.

> **a.    Count Two(a)**

Count Two(a) brings a federal malicious prosecution claim against Mayor Lane, Attorney Washburn, Attorney Santaella, Attorney Scott, and Officers Cleary, Glenn, and

Randall for carrying out the Trespass and Failure to Obey Charges. To prevail on a malicious prosecution claim, one of the elements Mr. Stuart would have to demonstrate is lack of probable cause for his arrest for trespass at the 2017 Meeting. *See Slade v. City of Phx.*, 541 P.2d 550, 552 (Ariz. 1975); *cf. West*, 128 F. Supp. 3d at 1240 (the existence of probable cause is a complete defense to malicious prosecution claims under both federal and Arizona law). This he cannot do without upending his state court conviction for failure to obey a police officer.

The facts that form the basis of Mr. Stuart's failure to obey a police officer conviction are as follows: After Mr. Stuart was told he was under arrest for trespassing at the podium, Officers Glenn and Cleary escorted Mr. Stuart from the 2017 Meeting to the outside of the building. (Doc. 58-1 at 7, 13). Once outside, Officer Cleary ordered Stuart to sit down on a nearby bench so that he could issue Mr. Stuart a citation for trespass. (*Id.*) "[Mr.] Stuart replied, 'I am fine standing and I am not going to do that.'" (*Id.* at 13). "Officer Cleary again ordered Stuart to sit down and if [Mr. Stuart] did not he would be charged with Disorderly Conduct and transported to jail." (*Id.*) When Mr. Stuart again refused to sit down, Officer Cleary handcuffed Mr. Stuart and transported him to jail. (*Id.* at 7, 13). Mr. Stuart was ultimately convicted for failing to obey a police officer under S.C.C. § 19-13, which states that "[n]o person shall refuse to obey a peace officer engaged in the discharge of his duty, or any other person authorized to aid in quelling any riot, rout or affray." S.C.C. § 19-13. In other words, Mr. Stuart was convicted for failing to obey a police officer while the officers were arresting him for trespass.

The Arizona Court of Appeals explained in *State v. Kaiser* that "[w]hile the Scottsdale City Code does not define 'peace officer' or 'discharge of duty,' the Arizona legislature has defined a 'peace officer' to be 'any person vested by law with a duty to maintain public order and make arrests,' and this duty can only be accomplished through the *lawful* enforcement of state and local laws." 65 P.3d at 467 (internal citation omitted) (emphasis added). "In other words, there is no violation of [S.C.C.] § 19-13 if the order that is refused is not one made in connection with the discharge of the duties of the peace

officer." (*Id*.)  *Kaiser* upheld constitutionality of S.C.C. § 19-13 as applied to a defendant who refused to obey police officers during a traffic stop because the defendant did not contest the validity of the underlying investigator stop or that the officers were engaged in the discharge of their duties when he refused to obey with their order.  *Id*.

Though Arizona state courts have not yet opined on the application of S.C.C. § 19-13 where there is an underlying arrest involved, the Ninth Circuit has repeatedly analyzed willful resistance of arrests under California Penal Code ("Cal. Pen. Code") § 148(a)(1), a state statute substantively similar to S.C.C. § 19-13.[17]  Cal. Pen. Code § 148(a)(1) also makes it a misdemeanor to willfully resist a police officer in the discharge of their duty of employment arrest under state law.[18]  And like convictions under S.C.C. § 19-13, for convictions under Cal. Pen. Code § 148(a)(1) to be valid, "a criminal defendant must have resisted, delayed, or obstructed a police officer in the *lawful* exercise of his duties." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015) (quotations and citation omitted) (emphasis in original).  "[A]n officer is not lawfully performing her duties when she detains an individual without reasonable suspicion or arrests an individual without probable cause." *Id*. at 1019 (quoting *Garcia v. Superior Court*, 177 Cal. App. 4th 803, 819 (Cal. 2009)).  In other words, "[a] suspect cannot be arrested for violating [Cal. Pen. Code §] 148 because he evaded an officer's attempt to arrest him unlawfully." *Johnson v. Bay Area Rapid Transit District*, 724 F.3d 1159, 1178 (9th Cir. 2013) (citations omitted).  This proposition is best illustrated by *Arpin v. Santa Clara Valley Transp.*

---

[17] The Arizona Supreme Court has stated that "if Arizona law has not addressed an issue, we 'look approvingly to the laws of California,' especially when interpreting a similar or identical statute," so long as the reasoning of the California case law is sound. *Moore v. Browning*, 50 P.3d 852, 859 (Ariz. 2002); *see also Newbill v. CVS Caremark, LLC*, 683 F. Supp. 3d 1004 (D. Ariz. 2023) (same).

[18] Cal. Pen. Code § 148(a)(1) provides the following:

> Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician, as defined in Division 2.5 (commencing with Section 1797) of the Health and Safety Code, in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

Cal. Pen. Code § 148(a)(1).

*Agency*, which reasoned that "[i]f the officers could not lawfully arrest a person for battery, the officers could also not lawfully arrest the person for resisting arrest." 261 F.3d 912, 920 (9th Cir. 2001) (alterations in original).

Count Two(a) presents a similar problem as that in *Arpin*. Again, to prevail on his Count Two for malicious prosecution, Mr. Stuart would need to prove that Officers Glenn and Cleary arrested him for trespass without probable cause. Mr. Stuart's contest that he was unlawfully arrested for trespass in Count Two(a) thus implicates the requirement that his conviction under S.C.C. § 19-13 must have been made in connection with an officer's lawful discharge of duties. If Officers Glenn and Cleary could not lawfully arrest Mr. Stuart for trespass, it would follow that they could also not lawfully arrest Mr. Stuart for failing to obey them during that underlying arrest. *Id.*; *Kaiser*, 65 P.3d at 467 ("[T]here is no violation of [S.C.C.] § 19-13 if the order that is refused is not one made in connection with the discharge of the duties of the peace officer."); *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 472 (9th Cir. 2007) ("Although [the criminal defendant] was also arrested . . . under California Penal Code section 148(a), any such resistance (and corresponding probable cause) arose out of the initial arrest for trespassing. If there was no probable cause to arrest [the criminal defendant] for trespassing in the first place, it makes no difference for the present purposes if he resisted arrest."). Put differently, if Mr. Stuart successfully showed that Officers Glenn and Cleary unlawfully arrested him for trespass, that finding would necessarily invalidate Mr. Stuart's conviction under S.C.C. § 19-13. *See Johnson*, 724 F.3d at 1178. Therefore, Count Two(a) is *Heck* barred.

Indeed, the Maricopa Superior Court noted the intertwining nature of Mr. Stuart's charge for trespass and subsequent conviction under S.C.C. § 19-13. It characterized Mr. Stuart's appeal of his conviction as an "attempt[] to recast his refusal [to sit down on a bench] as an exercise in aid of his constitutional free speech rights, and thus, the conviction [for failing to obey a police officer] as a denial of those rights. (Doc. 58-1 at 27). The superior court further summarized Mr. Stuart's principal argument on appeal as follows:

-      The refusal to allow Stuart to speak at the city council meeting was an

impermissible government-imposed prior restraint in violation of his right to speak under the Unites States and Arizona constitutions.

- Consequently, the orders that followed that refusal *viz.* Lane's order to move away from the speaker's podium and the later order of the Scottsdale police to sit down both grew out of that violation and, thus, were themselves unlawful.

- *A citizen may not be convicted for failure to comply with a government's unlawful order.*

(Doc. 58-1 at 34) (emphasis added). The superior court resolved these questions to affirm Mr. Stuart's conviction for failing to obey a police officer, which demonstrates that Mr. Stuart was evading Officers Glenn and Cleary's attempt to lawfully arrest him for trespass. Because Mr. Stuart cannot show he was maliciously prosecuted for criminal trespass without invalidating his conviction for failure to obey a police officer, this portion of Count Two must be dismissed under *Heck*.

In sum, that Mr. Stuart was convicted for failing to obey a police officer under S.C.C. § 19-13 necessarily means his underlying arrest for trespass was lawful. Accordingly, until and unless Mr. Stuart's conviction of failure to obey a police officer is overturned, he cannot claim he was maliciously prosecuted for trespass at the 2017 Meeting.

### b.    Count One(a)

To the extent Count One(a) alleges that Defendants intentionally destroyed exculpatory evidence during the Trespass and Failure to Obey Proceedings in violation of Mr. Stuart Fourteenth Amendment rights, it "aris[es] under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and [is] not the sort of relief that can be granted under a [Section] 1983 action." *Soto v. Los Angeles Cnty.*, 2020 WL 7978494, *6 (C.D. Cal. Oct. 29, 2020) (collecting cases) (citing *Skinner v. Switzer*, 562 U.S. 521, 536 (2011) ("*Brady* claims have ranked within the traditional core of habeas corpus and outside the province of [Section] 1983.")). Indeed, a successful *Brady* claim would result in a new trial. *See Giglio v. United States*, 405 U.S. 150, 153 (1972). Such an outcome in this matter would

necessarily imply or demonstrate the invalidity of Mr. Stuart's conviction for failing to obey a police officer given that Mr. Stuart's conviction was predicated on the same factual basis as the charge for trespass.  *See Skinner*, 562 U.S. at 536 (a claim that prosecutors and an investigator had " 'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence' cannot be maintained under [Section] 1983") (citing *Heck*, 512 U.S. at 490).  Therefore, Count One(a) is *Heck*-barred until Mr. Stuart has invalidated his underlying conviction.  *See Soto*, 2020 WL 7978494, *6 (citing *Turner v. Dumanis*, 2009 WL 539899, at *10 (S.D. Cal. Mar. 3, 2009), *aff'd*, 415 F. App'x 831 (9th Cir. 2011) (finding that "[a] determination that [a p]laintiff is entitled to declaratory or injunctive relief because the state or its agents in bad faith destroyed or failed to preserve material exculpatory evidence would . . . necessarily demonstrate the invalidity of his conviction")); *see Adams v. Greco*, 2018 U.S. Dist. LEXIS 71343, *2–3 (N.D. Cal. Apr. 27, 2018) (finding plaintiff's claims that defendants "ignor[ed] exculpatory evidence, and fabricat[ed] false evidence by 'plant[ing] physical evidence' in connection with his prosecution on criminal charges in state court" were *Heck* barred).

### 2. *Heck* Does Not Bar Claims Challenging the Threats Proceeding Because it did not Result in a Conviction

Count Two(b) also brings a federal malicious prosecution claim against the City, Mayor Lane, and Attorney Scott for carrying out the Threats Charges against him (Doc. 36 at ¶¶ 155–162), which were ultimately dismissed without prejudice in exchange for Mr. Stuart's consensual participation in a pre-trial diversion program.  (Docs. 36 at ¶ 69; 58 at 7).  Defendants appear to reason that entry into this program is akin to a conviction and sentence that cannot be disturbed under *Heck*.  (Doc. 58 at 10).  Mr. Stuart opposes, citing *Duarte v. City of Stockton* for the proposition that without a conviction, *Heck* cannot apply.  (Doc. 68 at 9 (citing 60 F.4th 566, 571 (9th Cir.), *cert. denied*, 143 S. Ct. 2665 (2023)).  The Court agrees with Mr. Stuart.

In *Duarte*, the Ninth Circuit held that a district court erred when dismissing the appellant's Section 1983 claims under *Heck* because "the *sine qua non* of *Heck* is a

judgment of conviction and a resultant sentence" and appellant's underlying state charges were dismissed upon him entering and completing the terms of a no contest plea agreement. *Id*. at 5571–72.  The circuit court clarified that "[t]he *Heck* bar . . . requires an actual judgment of conviction, not its functional equivalent."  *Id*. at 571 (citing *Wallace v. Kato*, 549 U.S. 384, 393 (2007)).  Under this principle, *Heck* cannot apply to Mr. Stuart's Threats Charges because those charges were ultimately dismissed.  *Id*. at 573 ("[W]here, as here, the criminal charges were dismissed and there is no conviction to impugn, the tension with which Heck was principally concerned is missing.").  Mr. Stuart's claim under Count Two(b) that he was maliciously prosecuted for the Threats Charges are also not *Heck* barred.  His claims under Count Five(a) that the City, Mayor Lane, and Attorney Scott infringed on and retaliated against his exercise of protected speech to psychiatric personnel by carrying out the Threats Prosecution against him without probable cause are not *Heck* barred for the same seasons.

In sum, the *Heck* doctrine bars Count Two(a) from alleging malicious prosecution behind the Trespass and Failure to Obey Proceedings and Count One(a) from alleging *Brady* violations in the Trespass and Failure to Obey Proceedings.  These claims will be dismissed.

### D.    The *Res Judicata* Doctrines

Defendants go on to argue that all Counts in the SAC are barred by either claim preclusion or issue preclusion based on various federal and state court rulings.  Although the Court has already found certain claims under Counts One, Two, Four, Five, and Six are *Rooker-Feldman* and *Heck* barred, the Court will nonetheless consider Defendants' *res judicata* challenges to those claims.

The preclusive effect of a former adjudication is generally referred to as "*res judicata*."  *Robi v. Five Platters, Inc.*, 838 F.2d 318, 321 (9th Cir. 1988).  The policy behind *res judicata* is to "protect adversaries from the expense and vexation attending multiple lawsuits, to conserve judicial resources, and to foster reliance on judicial action by minimizing the possibility of inconsistent decisions."  *Americana Fabrics, Inc. v. L &*

*L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir. 1985) (citing *Montana v. United States*, 440 U.S. 147, 153–54 (1979)). *Res judicata* involves two doctrines: claim preclusion and issue preclusion. The Ninth Circuit has distinguished the preclusion doctrines as follows:

> Under claim preclusion, a final judgment on the merits of a claim bars subsequent litigation of that claim. Claim preclusion prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. The related doctrine of issue preclusion, or collateral estoppel, bars relitigation, even in an action on a different claim, of all issues of fact or law that were actually litigated and necessarily decided in the prior proceeding.

*Id.* (internal citations and quotations omitted). "When the same claim or issue is litigated in two courts, the second court to reach judgment should give *res judicata* effect to the judgment of the first, regardless of the order in which the two actions were filed." *Id.* (citing *Chicago, R.I. & P. Ry. v. Schendel*, 270 U.S. 611, 615–17 (1926)). Federal courts apply federal *res judicata* rules to judgments issued by other federal courts. *Robi*, 838 F.2d at 322. However, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to apply the *res judicata* rules of a particular state to judgments issues by courts of that state. *Id.* (citing *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 519 (1986)).

### 1.    Federal Court Rulings[19]

Defendants argue that the federal court rulings in *Stuart v. City of Scottsdale*, No. 2:17-cv-01848-DJH (D. Ariz 2017) ("*Stuart I*") and *Stuart v. City of Scottsdale*, No. 2:20-cv-00755-JAT (D. Ariz. 2020) ("*Stuart II*") are preclusive of the Counts in the SAC because both of those matters concerned the Trespass and Failure to Obey Charges. In their Motion to Dismiss, Defendants point out *Stuart II* had already adjudicated and dismissed Mr. Stuart's second amended complaint—which included a *Monell* claim—

---

[19] This Court is taking judicial notice of the pleadings and orders in Mr. Stuart's closely related actions—namely, (1) an action that Mr. Stuart filed in this Court, *Stuart v. City of Scottsdale*, No. 2:17-cv-01848-DJH (D. Ariz) and (2) an action that Mr. Stuart filed in this district before Arizona District Judge James A. Teilborg, *Stuart v. City of Scottsdale*, 2:20-cv-00755-JAT (D. Ariz.). *See PageMasters*, 2009 WL 825810, at *2; *see also* Fed. R. Evid. 201(c); *see also* Fed. R. Evid. 201(b).

involving allegations that Mr. Stuart's constitutional rights were violated when he was arrested and prevented from speaking at the 2017 Meeting.  (Doc. 58 at 12–13 (citing *Stuart II*, ECF Nos. 151, 139-2, 139-8)).  Defendants thus assert Mr. Stuart cannot relitigate those claims here.  (*Id.*)  In the interim, this Court issued its March 27, 2024, Order granting summary judgment and dismissing with prejudice all of Mr. Stuart's remaining claims in *Stuart I*.  *Stuart I*, ECF No. 322 ("*Stuart I* Summary Judgment Order").  Defendants cite to the *Stuart I* Summary Judgment Order in its Reply, arguing the Order is dispositive of all Counts in the present SAC under the claim preclusion doctrine.  (Doc. 70 at 1–5).  Alternatively, Defendants argue the *Stuart I* Summary Judgment Order is dispositive of Counts One, Two, Four, Five, and Six under the issue preclusion doctrine.

Mr. Stuart argues *Stuart II* has no relation to the present SAC because that case stemmed from a writ of garnishment.  (Doc. 68 at 16–18).  He further maintains the *Monell* claim in *Stuart II* alleged difference unlawful policies than the present Count Four *Monell* claim.  (*Id.* at 18–19).  Even so, Mr. Stuart represents he can remove the allegations from his Count VI *Monell* claim that reference his arrest for trespass at the 2017 Meeting to avoid risk of claim preclusion.  (*Id.* at 14 (citing Doc. 36 at ¶¶ 188–189)).  He further states the SAC can be amended to remove allegations that are issue precluded.

The Court will first provide an overview of the relevant rulings in *Stuart I* and *Stuart II* before turning to Defendants' *res judicata* arguments.

### a. Overview of Federal Rulings

#### i. *Stuart II*

Like the present matter, Plaintiffs initiated *Stuart II* against the City; Mayor Lane; Scottsdale City Councilmembers Phillips, Littlefield, Whitehead, and Milhaven; City Manager Thompson; and Attorney Washburn.[20]   *Stuart II*, ECF No. 1.  Plaintiffs had filed various amended complaints alleging claims under Arizona state law and Section 1983, including a *Monell* claim, which stemmed from the defendants' application for a writ of

---

[20] Plaintiffs also filed *Stuart II* against non-parties City Councilmembers Klapp, and Korte; Scottsdale Senior Assistant City Attorney Anderson; and Scottsdale City Clerk Jagger. *Stuart II*, ECF No. 1.

garnishment of Mr. Stuart's community property in May 2019.  *Stuart II*, ECF Nos. 1; 27; 93.   In the operative second amended complaint, Mr. Stuart brought a Fourteenth Amendment claim for wrongful garnishment (count one); a Section 1983 conspiracy claim based on that garnishment (count two); a *Monell* claim (count three); a Fourth Amendment claim for unlawful seizure of marital property (count four); a First Amendment interference and retaliation claim (count five); and various state law claims for wrongful garnishment, abuse of process, intentional infliction of emotion distress, loss of consortium, defamation *per se*, and false light invasion of privacy (counts six–eleven).  *Id*., ECF No. 93.

Judge Teilborg granted in part the *Stuart II* defendants' motion for partial summary judgment on the claims raised in the Stuarts' second amended complaint.  *Id*., ECF No. 119.   Judge Teilborg found that defendants Mayor Lane; Attorney Washburn; Senior Assistant City Attorney Anderson; and Scottsdale City Councilmembers Klapp, Korte, Milhaven, Littlefield, Phillips, and Whitehead were entitled to qualified immunity on all federal claims against them.[21]  *Id*.  Judge Teilborg later ordered summary judgment on all remaining claims in favor of the *Stuart II* defendants.  *Id*., ECF No. 151 ("Judge Teilborg's Summary Judgment Order").  The Clerk of Court entered final judgment on March 9, 2022.  *Id*., ECF No. 152.  Plaintiffs appealed these Orders, *id*., ECF Nos. 153; 162, and the Ninth Circuit affirmed in all respects.  *Id*., ECF No. 169.  *Stuart II* remains closed.

### ii. *Stuart I*

Like the present matter, Mr. Stuart brought *Stuart I* against the City; Mayor Lane; City Councilmembers Littlefield and Milhaven; City Manager Thompson; Police Chief Rodbell; Attorney Washburn; Attorney Santaella; and Officers Cleary and Glenn.  *Stuart I*, ECF No. 1.[22]  The first amended complaint in *Stuart I* originally alleged nineteen counts for violations of Mr. Stuart's federal and state constitutional and statutory rights, including

---

[21] Qualified immunity applied to the claims as alleged under counts one, two, three, and four of the second amended complaint.  *Stuart II*, ECF No. 119.

[22] Mr. Stuart also filed *Stuart I* against non-parties City Councilmembers Phillips, Klapp, Korte, and Smith; Scottsdale Police Commander Hall; Scottsdale City Clerk Jagger; Scottsdale Police Officers Kaufmann and Stumpf; and Scottsdale Director of Parks and Recreation Pryor.  *Stuart I*, ECF No. 1.

freedom of speech, freedom of assembly, freedom of association, equal protection, due process, freedom from unlawful seizure and arrest, freedom from excessive force, intentional infliction of emotional distress, negligence, and violations of Section 1983. *Id.*, ECF No. 5. Like the present matter, *Stuart I* arose from Mr. Stuart's efforts to promote the SOP Initiative, including *inter alia* his arrest during public comment at the 2017 Meeting and his October 22, 2016, civil citation while posting signs about the SOP Initiative in Mountain View Park (the "2016 Citation"). *Id.* at 5–15.[23]

On March 16, 2021, this Court granted the *Stuart I* defendants' motion to dismiss all nineteen counts and entered judgment. *Id.*, ECF No. 163 ("*Stuart I* Motion to Dismiss Order"); *see also id.*, ECF. No. 164. Mr. Stuart appealed. *Id.*, ECF No. 165. In its August 31, 2022, Mandate, the Ninth Circuit affirmed this Court's decision to dismiss with prejudice seven of Mr. Stuart's Section 1983 claims, which included Mr. Stuart's Fourth Amendment claim that he was subject to an unlawful seizure following the 2016 Citation and 2017 Meeting (count one); Mr. Stuart's Fourth Amendment claim that Officer Cleary used excessive force during his arrest at the 2017 Meeting (count three); Mr. Stuart's claim that he was denied his First Amendment rights when defendants ordered him to take down his signs in Mountain View Park (count four); that the City, Mayor Lane, Attorney Washburn, Attorney Santaella, Officer Cleary, and Officer Glenn conspired to violate Mr. Stuart's constitutional rights (count five); that Mr. Stuart was denied due process under the Fifth and Fourteenth Amendment when defendants issued the 2016 Citation (count six); Mr. Stuart's claim that he was denied equal protection under the Fourteenth Amendment when the defendants charged him for trespassing at the 2017 Meeting based on the content of his speech (count seven); and that a City Council Rule of Procedure was unconstitutional under the First Amendment (count eight). *Id.*, ECF No. 170; see also *id.*, ECF No. 5. The Ninth Circuit also affirmed this Court's decision to dismiss with prejudice Plaintiff's state law claims alleging free speech and due process violations, abuse of process, intentional

---

[23] Mr. Stuart's claims also arose out a civil citation he received for placing signs on posts in a public park. *Stuart I*, ECF No. 5. All claims and allegations relating to his signage and civil citation were dismissed with prejudice.

1    infliction of emotional distress, conspiracy, and negligence (counts ten through nineteen).

2    *Id*., ECF No. 170 at 2.

3           However, the Ninth Circuit reversed this Court's dismissal of count two for First

4    Amendment interference and retaliation when Mr. Stuart was wrongfully arrested at the

5    2017 Meeting; and count nine for Mr. Stuart's claim under *Monell*.  *Id*., ECF No. 170.  On

6    remand, this Court granted the *Stuart I* defendants' motion for summary judgment on

7    counts two and nine based on three holdings:

8           -      First, upon application of the claim preclusion doctrine, this Court
9                  found the order dismissing Mr. Stuart's *Monell* claim in *Stuart II* was
10                 preclusive of his *Monell* claim under count nine against the City,
                   Mayor Lane, and Attorney Washburn.  *Stuart I* Summary Judgment
11                 Order at 12–22.

12          -      Second, in light of the Trespass and Failure to Obey Appeal's
13                 affirmance of Mr. Stuart's guilty conviction for failing to obey a
                   police officer in the Trespass and Failure to Obey Proceedings, this
14                 Court found the issue preclusion doctrine prevented Mr. Stuart from
15                 arguing Mayor Lane, Attorney Washburn, Attorney Santaella, Officer
                   Cleary, and Officer Glenn interfered with his First Amendment rights
16                 under count two.  *Id*. at 22–37.

17          -      Third, this Court found Mayor Lane, Attorney Washburn, Attorney
18                 Santaella, Officer Cleary, and Officer Glenn were entitled to qualified
                   immunity and could not be held liable for Mr. Stuart's First
19                 Amendment retaliation claims under count two, which left no
20                 independent basis to hold the City liable.  *Id*. at 37–43.

21          Mr. Stuart moved the Court to reconsider its *Stuart I* Summary Judgment Order,

22   which this Court denied.  (Doc. 336).  The *Stuart I* Summary Judgment Order is currently

23   on appeal.  (Doc. 327, 328).  *Stuart I* is otherwise closed.

24                 **b.      Defendants' Claim Preclusion Arguments**

25          Defendants broadly assert that the rulings in *Stuart I* Summary Judgment Order are

26   dispositive of all Counts in the present SAC under the claim preclusion doctrine.  (Doc. 70

27   at 1–5).  Claim preclusion "prevents litigation of all grounds for, or defenses to, recovery

28   that were previously available to the parties, regardless of whether they were asserted or

determined in the prior proceeding." *Robi*, 838 F.2d at 322 (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).  In other words, claim preclusion does not only apply to "questions essential to and actually litigated in the first action"; rather it "bar(s) all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause of action." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) (quoting *Ross v. IBEW*, 634 F.2d 453, 457 (9th Cir. 1980)). Because *Stuart I* was litigated in federal court, federal *res judicata* rules apply. *Robi*, 838 F.2d at 322.  Unlike Arizona's liberal "same evidence" test,[24] claim preclusion applies under federal law when "the earlier suit . . . (1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies." *Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir. 2002).  It is undisputed that *Stuart I* reached a final judgment and involved identical parties.  Thus, at issue is the first element.

To determine whether two suits involve the same claim or cause of action under the first claim preclusion element, courts evaluate four claim identity considerations:

> (1)    The first consideration is "whether the two suits arise out of the same transactional nucleus of facts." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005).  This consideration, "depends upon whether they are related to the same set of facts and . . . could conveniently be tried together." *Proshipline Inc. v. Aspen Infrastructures Ltd*, 609 F.3d 960, 968 (9th Cir. 2010).  This inquiry "is essentially the same as whether the claim *could have been brought* in the first action." *Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 918 (9th Cir. 2012) (internal quotation omitted) (emphasis added).  The Ninth Circuit has "often held the common nucleus criterion to be outcome determinative." *Mpoyo*, 430 F.3d at 988.

> (2)    The second consideration is "whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of

---

[24] Claim preclusion applies under Arizona state law according to the 'same evidence' test. "The 'same evidence' test is quite liberal, and permits a plaintiff to avoid preclusion merely by posturing the same claim as a new legal theory, even if both theories rely on the same underlying occurrence." *Power Rd.-Williams Field LLC v. Gilbert*, 14 F. Supp. 3d 1304, 1309 (D. Ariz. 2014).

the second action." *Id*. at 987.

(3)    The third consideration is "whether the two suits involve infringement of the same right." *Id*.

(4)    The fourth consideration is "whether substantially the same evidence is presented in the two actions." *Id*.

The Ninth Circuit has instructed that these considerations are "tools of analysis, not requirements." *Int'l Union of Operating Engineers-Emps. Const. Indus. Pension, Welfare & Training Tr. Funds v. Karr*, 994 F.2d 1426, 1429–30 (9th Cir. 1993) (quoting *Derish v. San Mateo–Burlingame Bd. of Realtors*, 724 F.2d 1347, 1349 (9th Cir. 1983)).

Defendants argue all claim identity considerations merit application of claim preclusion to the entire SAC. They contend the first consideration is met because every claim in the SAC could have been brought in *Stuart I* and thus arise out of the same nucleus of facts. (Doc. 70 at 2). Namely, Defendants say both matters stem from Mr. Stuart's arrest at the 2017 Meeting, his subsequent prosecution for trespass and failure to obey a police officer, and his theory that Defendants implemented a scheme to silence Mr. Stuart's protected speech. (*Id*. at 2–3). Defendants further argue *Stuart I* established (a) the City is not liable for enforcing unstated discriminatory policies against Mr. Stuart nor failing to train its employees; and (b) Mayor Lane, Attorney Santaella, Officer Glenn, and Officer Cleary are entitled to qualified immunity. (*Id*. at 3). Defendants reason these rights would be significantly impacted for purposes of the second consideration should the present matter proceed. (*Id*.) As to the fourth consideration, Defendants assert Mr. Stuart's claimed infringement of his right to speak about the SOP Litigation during the 2017 Meeting underlies both cases. (*Id*.) Last, Defendants maintain the evidence of "purported . . . antipathy toward Mr. Stuart's message would be relevant in both actions, as would the subjective motives of all the individual Defendants." (*Id*.)

Mr. Stuart opposes, arguing the SAC is about his prosecution for trespass, not his arrest. (Doc. 68 at 15). He further maintains his malicious and retaliatory prosecution claims under Counts Two and Five could not have been brought earlier due to their accrual

1    dates.  (*Id.*)

2         At the outset, the Court notes the first amended complaint in *Stuart I* largely

3    concerned Mr. Stuart's efforts to promote the SOP Initiative in 2016–2017.  It did not relate

4    to the seizure of Mr. Stuart's guns in November 2019 or the threatening statements he made

5    while hospitalized in November 2021.  So, it is readily apparent that *Stuart I* cannot

6    preclude any Count in the SAC as it relates to the Threats Charges or Count Three for

7    unreasonable seizure under *res judicata* principles.  The remaining question is whether

8    *Stuart I* operates to preclude the SAC as it relates to the Trespass and Failure to Obey

9    Charges and Mr. Stuart's efforts to promote the SOP Initiative.  The Court will proceed by

10   comparing the allegations underlying the operative first amended complaint in *Stuart* I to

11   the SAC's Counts One, Two, Four, Five, Six in light of the claim identity considerations.

12   *Compare Stuart I*, ECF. No. 5 *with* (Doc. 36).

13                    **i.      Mr. Stuart's claims regarding the Trespass and**
14                    **Failure to Obey Charges under Counts One, Two,**
15                    **and Six are not barred by claim preclusion**

16        Count One(a) invokes the Fourteenth Amendment and alleges in part that

17   Defendants violated Mr. Stuart's due process rights in the Trespass and Failure to Obey

18   Proceedings when they destroyed *Brady* evidence.  (Doc. 36 at ¶¶ 140–49).  Mr. Stuart's

19   *Brady* challenge presumably concerns the February 2020 trial that resulted in the State

20   Court Trespass and Failure to Obey Judgment and Trespass and Failure to Obey Appeal

21   thereafter.  *See United States v. Bagley*, 473 U.S. 667, 682 (1985) (explaining that to

22   demonstrate a *Brady* violation, the plaintiff must show a "reasonable probability that, had

23   the evidence been disclosed to the defense, the result of the proceeding would have been

24   different").  Similarly, Counts Two(a) and Six are for malicious prosecution of the Trespass

25   and Failure to Obey Charges, which "do[] not accrue until the prior proceedings have

26   terminated in the accused's favor, including any pending appeal that could lead to further

27   proceedings."  *Donahoe v. Arpaio*, 986 F. Supp. 2d 1091, 1108 (D. Ariz. 2013) (citing

28   *Amfac Distribution Corp. v. Miller*, 673 P.2d 792, 794 (Ariz. 1983) (concluding that the

"damaging effect" of litigation is "not ascertainable until the appellate process is completed or is waived by a failure to appeal"). Counts One(a), Two(a), and Six thus concern conduct that occurred during Mr. Stuart's Trespass and Failure to Obey Proceedings spanning from 2019–2021, years after *Stuart I* was filed in 2017. Even though all causes of actions stem from the 2017 Meeting, it cannot be said that they arise out of the same nucleus of facts under the first claim identity consideration because they could not have been conveniently tried together. As this Court has already explained, "although Plaintiffs bring some of the same causes of action as in prior suits, they are predicated, in part, upon factual developments that occurred after the filing of the operative complaints in Stuart I and II." (Doc. 53 at 8 (citing *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040 (9th Cir. 2017) ("[F]or purposes of federal common law, claim preclusion does not apply to claims that accrue after the filing of the operative complaint."))). And because *Stuart I* was filed before the Trespass and Failure to Obey Proceedings were completed, Counts One(a), Two(a), and Six do not, and could not,  involve infringement of the same rights and require analysis of new evidence. Counts One(a), Two(a), and Six therefore do not involve the same causes of action as *Stuart I* and are not barred by claim preclusion.

### ii.    Count Four(a) is barred by claim preclusion

Count Four(a) is a *Monell* claim premised in part on the theory that the City ratified Attorneys Washburn and Scott's actions when they denied Mr. Stuart access to *Brady* evidence during the Trespass and Failure to Obey Prosecution as part of the City's policies for "due process violation policies." (Doc. 36 at ¶¶ 186, 194). The Court already found that Mr. Stuart's *Brady* challenges in Count One(a) are not barred by claim preclusion because they could not have been tried in *Stuart I*. *See supra* Section III.D (1)(b)(i). However, Count Four is based on the theory that the City ratified Mayor Lane and Attorney Washburn's actions when they carried out the Trespass and Failure to Obey Charges against Mr. Stuart as part of the City's "speech suppression policies" and that Mr. Stuart's 2016 Civil Citation is another example of Defendants' speech suppression policies (Doc.

36 at ¶¶ 184, 187–190, 193).  Defendants argue Mr. Stuart's *Monell* claim is precluded by *Stuart I*'s holding that Mr. Stuart cannot bring *Monell* claims in light of *Stuart II*.  (Doc. 70 at 4).

Mr. Stuart's count nine *Monell* claim in *Stuart I* was based on allegations spanning from October 2016–June 2017 that purportedly showed the defendants "conspired together to chill Stuart's speech culminating with his arrest for trespassing at a Scottsdale City Council meeting" on February 7, 2017.  *Stuart I*, ECF No. 5 at ¶¶ 27–76.  Such allegations included Mr. Stuart's 2016 Citation.  The count nine *Monell* claim further alleged Mr. Stuart's efforts to speak at the February Meeting and subsequent arrest demonstrated he "was subjected to retaliatory conduct by law enforcement and other Scottsdale employees and agents, was prosecuted criminally with no evidence to support the charges, with an unconstitutional motive, and without probable cause, equal protection or due process in an attempt to chill Mr. Stuart's free speech, and to intimidate, harass, and exact revenge for prior exercises of free speech and assembly in Scottsdale."  *Id.* at ¶ 163.

It is readily apparent that the "speech suppression policies" in Count Four(a) of the SAC rely on the same nucleus of facts underpinning Mr. Stuart's *Monell* claim in *Stuart I*. Both counts raise the 2016 Citation and the course of events that occurred at the 2017 Meeting to assert the defendants had a custom of retaliating against Mr. Stuart when he sought to exercise his free speech rights.  *Compare Stuart I*, ECF No. 5 at ¶¶ 28–31, 150–166 *with* (Doc. 36 at ¶¶ 24–54, 187–193).  This demonstrates that both claims could have been tried together, involve the alleged infringement of the same right, and are based on substantially the same evidence under the first, second and forth claim identity considerations.  Furthermore, the *Stuart I* Summary Judgment Order established that the claim preclusion doctrine prevented Mr. Stuart from bringing his count nine *Monell* claim because *Stuart II* already disposed of his prior *Monell* claim that was predicated on numerous examples of the defendants' "equal protection and due process violations policies," including Mr. Stuart's arrest and speech restraint at the 2017 Meeting.  *Stuart I* Summary Judgment Order at 15–16, 20–22.   Allowing  this  same  theory  under

Count Four(a) to move forward in this matter would destroy those rights and interests established in *Stuart I* under the second claim identity consideration.  This Court already adjudicated and dismissed with prejudice count nine of *Stuart I*.  *See generally Stuart I* Summary Judgment Order.  Those findings apply with equal force to bar Count Four(a) under the claim preclusion doctrine.

### iii.    Count Five(b) is barred by claim prelusion

Count Five(b) alleges that the City, Attorney Scott, City Manager Thompson, and the City Council members "violated Stuart's First Amendment rights by threatening to enforce the undefined jurisdictional requirements for speech at Public Comment against Stuart about October 14, 2021" which "chilled Stuart's speech, and Stuart did not attend and speak at city council meetings on Oct. 19, 2021, Nov. 9, 2021, and Nov. 16, 2021." (Doc. 36 at ¶ 223).  The "undefined jurisdictional requirements for speech" that Mr. Stuart complains of is the following Public Comment section that was stated in the October 5, 2021 agenda:

> Public Comment time is reserved for Scottsdale citizens to comment on *non-agendized items that are within the Council's jurisdiction*.  No official Council action can be taken on these items.  Public Comment time is also the designated time for presenting a citizen petition.  There is no limit on the number of petitions a citizen may present; however, each citizen is limited to a total time of three minutes to present and speak to the petition(s).  A Request to Speak form must be submitted together with the petition(s) before the Mayor announces the second Public Comment period.

> Speakers may address the Council once under Public Comment at the beginning or the end of the meeting, but not both.  Public Comment is limited to a total of 15 minutes at the beginning and 15 minutes at the end of the meeting.  **Speakers are limited to three minutes to address the Council during "Public Comment."**

(Doc. 36 at ¶ 219); Scottsdale City Council, *10-05-21-marked-regular-and-work-study-agenda*, Archived City Council Agendas and Minutes, 2, 6  (2021), https://ww2.scottsdaleaz.gov/Assets/ScottsdaleAZ/Council/archive-agendas-minutes/2021-agendas/10-05-21-regular-and-work-study-agenda.pdf  (emphasis  added).

Mr. Stuart asserts the City's lack of definition for what constitutes "non-agendized items that are within the Council's jurisdiction" allows "[t]he presiding officer of a city council meeting [to] decide[] whether speech is within the Council's jurisdiction based solely on her personal predilections and whims" and results in "unlimited discretion to allow speech or disallow speech at Public Comment based solely on her personal preferences and beliefs." (Doc. 36 at ¶ 219). Mr. Stuart further alleges Defendants enforced these undefined jurisdictional requirements to censor his speech on "matters of broad public concern in Scottsdale, including misuse of public monies by Scottsdale employees, criticisms of the city council and ongoing free speech violations by Scottsdale and its employees." (*Id*. at ¶ 223).

The Court finds the allegations under Count Five(b) implicates count two in *Stuart I*, which claims First Amendment interference when Mr. Stuart was arrested and prevented from speaking at the 2017 Meeting *inter alia* because his SOP Initiative presentation violated the Open Meeting Law. At first glance, it seems that both counts could not have been conveniently tried together under the first identity claim consideration since Count Five(b) is based on events that occurred at 2021 City Council meetings and count two in *Stuart I* is based on the 2017 Meeting. However, the Court finds the remaining considerations weigh in favor of claim preclusion because both counts allege First Amendment violations based on the same restraint on speech as applied to the same conduct.

To start, the "undefined jurisdictional requirements for speech" Mr. Stuart identifies in the October 5, 2021, agenda are substantively the same as those enforced against him at the 2017 Meeting. *Compare* Scottsdale City Council, *10-05-21-marked-regular-and-work-study-agenda*, Archived City Council Agendas and Minutes, 2, 6 (2021), https://ww2.scottsdaleaz.gov/Assets/ScottsdaleAZ/Council/archive-agendas-minutes/2021-agendas/10-05-21-regular-and-work-study-agenda.pdf *with* Scottsdale City Council, *02-07-17_Marked_Regular_Agenda*, Archived City Council Agendas and Minutes, 2, 4 (2017), https://ww2.scottsdaleaz.gov/Assets/ScottsdaleAZ/Council/archive-

agendas-minutes/2017-agendas/020717RegularAgenda.pdf ("Public Comment time is reserved for citizen comment regarding *non-agendized items that are within the Council's jurisdiction*. No official Council action can be taken on these items. Public Comment is limited to a total of 15 minutes at the beginning and 15 minutes at the end of the meeting. **Speakers are limited to three minutes to address the Council during "Public Comment."**) (emphasis added). Mr. Stuart also attempted to present on the same subject matter at the 2017 Meeting and the October 2021 meetings—namely, the SOP Initiative and the City's misuse of funds. This demonstrates Count Five(b) and count two in *Stuart I* involve the alleged infringement of the same right and are based on substantially the same evidence. *Compare Stuart I*, ECF No. 5 at ¶¶ 29, 40 ("Scottsdale placed an unconstitutional prior restraint on the content of Stuart's speech in order to arrest him in an effort to chill further speech in opposition to building the preserve.") ("Stuart publicly requested that Scottsdale cease and desist any expenditures of public money to advocate for building in the Preserve.") *with* (Doc. 36 at SCOTTSDALE, SCOTT, THOMPSON AND THE CITY COUNCIL violated Stuart's First Amendment rights by threatening to enforce the undefined jurisdictional requirements for speech at Public Comment against Stuart about October 14, 2021 [that] chilled Stuart's speech, and Stuart did not attend and speak at city council meetings . . . about matters of broad public concern in Scottsdale, including misuse of public monies by Scottsdale employees, criticisms of the city council and ongoing free speech violations by Scottsdale and its employees."). The third and fourth claim identity considerations weight in favor of claim preclusion.

Moreover, the *Stuart I* Summary Judgment Order established that the issue preclusion doctrine prevented Mr. Stuart from arguing defendants interfered with his First Amendment rights under count two because the Trespass and Failure to Obey Appeal Ruling already settled he was subject to a lawful, viewpoint neutral restraints on speech at the 2017 Meeting. *Stuart I* Summary Judgment Order at 24–30. Because those speech restraints were also enforced at the October 2021 City meetings, allowing Count Five(b) to move forward in this matter would destroy those rights and interests established in *Stuart*

1    *I* under the second claim identity consideration.  In short, Count Five(b) and count two of

2    *Stuart I* both allege First Amendment violations based on the same restrained speech.  This

3    Court already adjudicated and dismissed with prejudice count two of *Stuart I*.  *See*

4    *generally id*.  Those findings apply with equal force to bar Count Five(b) under the claim

5    preclusion doctrine.

6            **c.      Defendants' Issue Preclusion Arguments**

7            Alternatively, Defendants argue the *Stuart I* Summary Judgment Order is

8    dispositive of Counts One, Two(a), Four(a), Five, and Six under the issue preclusion

9    doctrine.  Because *Stuart I* was litigated in federal court, federal *res judicata* rules apply.

10   *Robi*, 838 F.2d at 322.[25]  "For issue preclusion to apply, four conditions must be met: '(1)

11   the issue at stake was identical in both proceedings; (2) the issue was actually litigated and

12   decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the

13   issue; and (4) the issue was necessary to decide the merits.' "  *Janjua v. Neufeld*, 933 F.3d

14   1061, 1065 (9th Cir. 2019) (quoting *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir.

15   2012)).  An issue is "actually litigated" for collateral estoppel purposes when it "is raised,

16   contested, and submitted for determination."  *Id*. at 1066 (citing Restatement (Second) of

17   Judgments § 27, cmt. (d) (1982)).  Furthermore, "[a] 'final judgment' for purposes of

18   collateral estoppel can be any prior adjudication of an issue in another action that is

19   determined to be 'sufficiently firm' to be accorded conclusive effect."  *Luben Indus., Inc.*

20   *v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983).

21           Defendants argue the *Stuart I* Summary Judgment order has settled issues regarding

22   probable cause, Mr. Stuart's lack of protected rights at the 2017 Meeting, and the absence

23

24   [25] In any event, "Arizona courts apply the same issue preclusion test as federal courts."
     *Quinn v. Cardenas*, 535 P.3d 921, 928 (Ariz. Ct. App. 2023).  When asserted defensively,
25   as here, collateral estoppel applies under Arizona law when "(1) the issue at stake is the
     same in both proceedings; (2) the issue was actually litigated and determined in a valid and
26   final judgment issued by a tribunal with competent jurisdiction; (3) the opposing party had
     a full and fair opportunity to litigate the issue and actually did so; and (4) the issue was
27   essential to the judgment.  *Legacy*, 524 P.3d at 1148 (citing *Chaney Bldg. Co. v. Tucson*,
     716 P.2d 28, 30 (1986)); *see also Seyed Mohsen Sharifi Takieh v. Banner Health*, 515 F.
28   Supp. 3d 1026 (D. Ariz. 2021).  An issue is "actually litigated" for collateral estoppel
     purposes when it is "is properly raised by the pleadings or otherwise, and is submitted for
     determination, and is determined[.]"  *Chaney*, 716 P.2d at 30.

of discriminatory policies maintained by the City that accord preclusive effect.

> **i.** **The existence of probable cause cannot be relitigated under Count Two(a), but Counts One(a) and Count Six are not barred under the issued preclusion doctrine.**

Defendants first argue the *Stuart I* Summary Judgment Order's finding that probable cause existed to arrest Mr. Stuart for trespass at the 2017 Meeting is dispositive of Counts One(a), Two(a), and Six to the extent they are predicated upon the Trespass and Failure to Obey Charges and Proceedings. (Doc. 70 at 5). Indeed, Count Two(a) alleges Defendants caused Mr. Stuart to be prosecuted for trespassing without probable cause. (Doc. 36 at ¶ 151). This identical issue was relevant to count two of *Stuart I*. *Stuart I*, ECF No. 5 at ¶ 91 ("Plaintiff Stuart was arrested on February 07, 2017 without probable cause, without lawful justification, and for improper motives."). Whether there was probable cause to arrest Mr. Stuart at the podium was raised, contested, and submitted for determination by the parties at the summary judgment phase in *Stuart I*, and all parties had a full and fair opportunity to argue the issue. *See generally id.*, ECF Nos. 251, 298, 314, 282, 299, 313 (the parties' summary judgment briefs).

The *Stuart I* Summary Judgment Order engaged in a two-fold discussion of probable cause under count two for retaliatory arrest. This Court first found that neither the State Court Trespass and Failure to Obey Judgment nor the Trespass and Failure to Obey Appeal addressed the issue of probable cause, and so collateral estoppel did not apply to preclude Mr. Stuart's retaliatory arrest claim on probable cause grounds. *Stuart I* Summary Judgment Order at 34–37. The Court went on to independently assess the existence of probable cause and found in the negative. *Id.* at 39–41 (explaining that the circumstances of the 2017 Meeting "could lead a reasonable officer to believe there was probable cause to arrest Mr. Stuart for remaining unlawfully at the podium under A.R.S. § 13-1503A, and that doing so conformed with Police General Order 2014"). This negative finding was material to the Court's ruling that the individual *Stuart I* defendants were entitled to

qualified immunity and could not be held liable for Mr. Stuart's First Amendment retaliation claims. *Id.* at 42. Thus, the issue of probable cause was necessary for this Court to decide count two in *Stuart I* was without merit. Furthermore, "a summary judgment dismissal [] is considered a decision on the merits for *res judicata* purposes." *Myopo*, 430 F.3d at 988 (citing *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005)). Therefore, all issue preclusion considerations are met.

The Court agrees with Defendants that Mr. Stuart's claim that the Trespass and Failure to Obey Charges were pursued with malice in Count Two(a) cannot survive in light of this Court's affirmative finding of probable cause because, as explained, the existence of probable cause is a complete defense to malicious prosecution claims under both federal and Arizona law. *West*, 128 F. Supp. 3d at 1240. Count Two(a) must be dismissed with prejudice under the issue preclusion doctrine. However, the state malicious prosecution claim under Count Six goes to the Threats charges only, not the Trespass and Failure to Obey Charges. (*See* Doc. 36 at ¶¶ 228–230). *Stuart I* made no finding of probable cause with respect to the threatening statements Mr. Stuart made while hospitalized. Nor have Defendants adequately explained how a finding of probable cause would affect Mr. Stuart's procedural due process challenges under Count One(a) and regarding *Brady* evidence. (*Id.* at 141–42, 145–46). For these reasons, *Stuart I* does not bar Counts One(a) and Six under the issue preclusion doctrine.[26]

> **ii.    Count Five is not barred by issue preclusion because the extent of Mr. Stuart's protected rights at the 2021 Meetings has not been litigated**

Defendants next argue *Stuart I* Summary Judgment Order's finding that Attorney Washburn, Attorney Santaella, and Mayor Lane "did not retaliate against Mr. Stuart, and thus there was no protected right [for him] to commandeer the February 7, 2017 meeting, is fatal to Count Five because "[t]here can be no First Amendment retaliation without a protected First Amendment right." (Doc. 70 at 5). But neither theory under Count Five

---

[26] These Counts are nonetheless barred by the *Rooker-Feldman* doctrine, as discussed *supra*.

alleges First Amendment interference and retaliation based on the 2017 Meeting—Count Five either goes to the Threats Charges or to events that transpired at October 2021 City Council meetings.  (Doc. 36 at ¶¶ 216–225).  Thus, the *Stuart I*'s finding that defendants did not retaliate against Mr. Stuart at the 2017 Meeting are not identical to the issues underlying Count Five.  "Unlike claim preclusion, . . . issue preclusion requires that an issue must have been 'actually and necessarily determined by a court of competent jurisdiction' to be conclusive in a subsequent suit."  *Janjua*, 933 F.3d at 1065 (citing *Montana v. United States*, 440 U.S. 147, 153, (1979)).  *Stuart I* does not bar Count Five under collateral estoppel.[27]

### iii.   Count Four(a) is issue precluded because the lawfulness of the City's policies have already been litigated

Defendants last argue the *Stuart I* Summary Judgment Order settled that Mr. Stuart's constitutional rights were not violated at the 2017 Meeting, which is dispositive of the Count Four *Monell* claim.  (Doc. 70 at 5).  Indeed, Count Four(a) is based on the theory that the City ratified Mayor Lane and Attorney Washburn's actions as final policy makers when they carried out the Trespass and Failure to Obey Charges against Mr. Stuart as part of the City's "speech suppression policies."  (Doc. 36 at ¶¶ 184, 187–190). Mr. Stuart alleges the following conduct was a part of the "speech suppression policies": (1) the Trespass and Failure to Obey Charges were brought to "retaliate on [Mr.] Stuart for prior free speech activities, to burden, discourage, and chill Stuart's exercise of free speech about the [SOP] Initiative in the future, and to deny him the equal protection of law"; (2) Mr. Stuart was wrongfully arrested for trespass at the podium during the 2017 Meeting; and (3) the City enforced "undefined jurisdictional requirements for speech at open public comment about January 30, 2017."  (*Id*. at ¶¶ 184, 188, 190).

All of the issues outlined above were identical to the issues material to count two of *Stuart I* for First Amendment interference and retaliation.  *See Stuart I*, ECF No. 5 at ¶ 92

---

[27] Nonetheless, as discussed *supra*, Count Five (a) is barred by *Rocker Feldman* and Count Five(b) is barred by claim preclusion.

("[1] [Mr.] Stuart was arrested in retaliation for the exercise of his First Amendment rights in the council meeting on Feb. 07, 2017."); *id.* at ¶ 91, 94 ("[2] [Mr.] Stuart was arrested on February 07, 2017 without probable cause, without lawful justification, and for improper motives" and "Defendants Lane, Washburn, Santaella, Glenn and Cleary planned and orchestrated the unlawful arrest"); *id.* at ¶ 29 ("[3] Scottsdale placed an unconstitutional prior restraint on the content of [Mr.] Stuart's speech in order to arrest him in an effort to chill further speech in opposition to building in the Preserve."). These issues were subsequently raised, contested, and submitted for determination by the parties at the summary judgment phase in *Stuart I*, and so all parties had a full and fair opportunity to argue the issue. *See generally id.*, ECF Nos. 251, 298, 314, 282, 299, 313 (the parties' summary judgment briefs).

As to the first issue, the *Stuart I* Summary Judgment Order invoked the Trespass and Failure to Obey Appeal to find "the doctrine of issue preclusion prevents Mr. Stuart from reasserting that Mayor Lane, Attorney Washburn, and Attorney Santaella retaliated against him when they took action to suppress his speech at the February Meeting." *Stuart I* Summary Judgment Order at 34. Second, *Stuart I* independently settled that Officers Glenn and Cleary had probable cause to arrest Mr. Stuart at the podium. *Id.* at 39–42. Last, *Stuart I* rejected Mr. Stuart's efforts to relitigate the issue of his speech suppression, relying on the Trespass and Failure to Obey Appeal's holding that "the refusal to allow Stuart to urge support at a city council meeting for what was a political issue and to solicit volunteers to join the effort was both reasonable and viewpoint-neutral." *Id.* at 25. These rulings resulted in count two of *Stuart I* for First Amendment interference and retaliation being dismissed with prejudice, which constitutes a final decision on the merits. Therefore, all four issue preclusion considerations are met. The Count Four(a) *Monell* claim is barred to the extent it claims the Trespass and Failure to Obey Charges were brought as part of the City's speech suppression policies.

## 2.    State Court Rulings

The parties also disagree over whether certain rulings in the Trespass and Failure to

Obey Appeal have any *res judicata* effect on Stuart's present claims of First Amendment interference, retaliation, and speech suppression policies. (*See* Docs. 58 at 1; 68 at 4). But these arguments were advanced by the parties in *Stuart I* at summary judgment. *See Stuart I*, ECF No. 282 at 7–9 (the *Stuart I* defendants argued "Mr. Stuart cannot prevail . . . because, he had a 'full and fair opportunity to litigate the issue' as to whether or not the conduct of officers Glenna and Cleary, or any other City Official were unconstitutional" and "[t]he state court determined, categorically, that the "City of Scottsdale *did not* violate [Mr. Stuart's] First Amendment rights when it prevented [him] from presenting information during the public comment period' at the February 7, 2017 City Council Meeting"); *id*., ECF No. 299 at 8–9 (Mr. Stuart responded that he "had no opportunity to present evidence that he was engaged in constitutionally protected free speech as the podium, in the lower court appeal"); *id*., ECF No. 313 at 4–6 (the *Stuart I* defendants replied that "the superior court *has already held* that [their] conduct complied with longstanding Ninth Circuit authority regarding regulation of speech, and disruptive speakers, at public meetings") (emphasis in original). As already explained in great detail, the *Stuart I* Summary Judgment Order's reconciliation with the Trespass and Failure to Obey Appeal's holdings bar Counts Two(a), Four(a), and Five(b), that relate to the Trespass and Failure to Obey Charges and allege Mr. Stuart was wrongfully arrested and prevented from speaking at the 2017 Meeting under *res judicata* principles. *See supra* Section III.D(1). This Court need not repeat its analysis here.

### 3. *Res Judicata* Conclusion

In sum, the claim preclusion doctrine bars Counts Four(a) and Five(b), both of which relate to the Trespass and Failure to Obey Charges and/or allege the events that transpired during the 2016 Citation and 2017 Meeting. Furthermore, collateral estoppel bars the malicious prosecution claim under Count Two(a) regarding the Trespass and Failure to Obey Proceedings and Count Four(a) to the extent it claims the Trespass and Failure to Obey Charges were brought as part of the City's speech suppression policies. Thus, Counts Two(a), Four(a), and Five(b) must be dismissed according to *res judicata*

1   principles.

2   **E.   Failure to State a Claim under Rule 12(b)(6) and Rule 8**

3   Defendant's final argument is that none of the Counts in the SAC state plausible

4   claims under Rule 12(b)(6) and should be dismissed.   Specifically, Defendants argue

5   (1) Mr. Stuart has not alleged any conduct by certain Defendants; (2) Mr. Stuart fails to

6   state a *Monell* claim against the City under Count Four; (3) Mr. Stuart fails to allege

7   malicious prosecution claims under Count Two and Six due to probable cause and lack of

8   favorable termination; (4) all individual Defendants are entitled to qualified immunity on

9   Plaintiffs' Section 1983 claims; and (5) Attorney Washburn and Attorney Scott are entitled

10  to absolute immunity on Plaintiffs' malicious prosecution claims.

11
12  **1.   There is no Conduct Alleged on Behalf of the City Councilmembers and Mayor Ortega**

13  Defendants first argue Mr. Stuart has not stated any cognizable claim against the

14  City Councilmembers Littlefield, Whitehead, Milhaven, Caputi, Janik, Durham; Mayor

15  Ortega; City Manager Thompson; or Officer Randall because he failed to allege any

16  specific conduct on each of their parts. Defendants reason these parties should be dismissed

17  "because there is no *respondeat superior* liability under § 1983 [and] a plaintiff must plead

18  that each defendant was personally involved in the constitutional deprivation to state a

19  claim under that statute."  (Doc. 58 at 13) (citing *Prison Legal News v. Babeu*, 933 F. Supp.

20  2d 1188, 1204 (D. Ariz. 2013)).   In response, Mr. Stuart says portions of the SAC outline

21  specific conduct on behalf of City Manager Thompson and Officer Randall.  (Doc. 68 at

22  19 (citing Doc. 5 at ¶¶ 24, 25, 27–29, 49–54, 51, 134, 166–67, 172–73, 223)).   He says

23  nothing about the City Councilmembers or Mayor Ortega.  (*Id.*)

24  To comply with Rule 8, a plaintiff must specifically identify the allegations against

25  each individual defendant; in an instance where there are multiple defendants and multiple

26  factual events in which not all defendants individually participated, it is insufficient to

27  broadly allege liability on behalf of "Defendants."  *McHenry v. Renne*, 84 F.3d 1172, 1176

28  (9th Cir. 1996) (affirming dismissal when "plaintiffs did not specify which defendants were

liable on which of the claims" and each claim instead "says defendants' conduct violated various rights of plaintiffs, without saying which defendants") (internal quotations omitted).  Here, Mr. Stuart has alleged no action on part of the City Councilmembers or Mayor Ortega.  The SAC thus fails to state any cognizable claim against them, even when construed liberally.  *Twombly*, 550 U.S. at 557 (A complaint is insufficient when it provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that are supported by "naked assertions" without "further factual enhancement").  Therefore, the City Councilmembers and Mayor Ortega will be dismissed from this action.  Mr. Stuart sufficiently identifies conduct in the SAC against City Manager Thompson and Officer Randall that satisfies Rule 8, however.

### 2.   The Count Four(c) and (d) *Monell* Claims Fail to Plausibly Allege Unlawful Policies

As to Count Four(c) and (d), Defendants assert Mr. Stuart fails to identify a governmental policy that establishes Section 1983 liability against the City.  (Doc. 58 at 14).  *Monell* established that a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory.  436 U.S. at 690; *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016).  Rather, to state a claim against a municipality under Section 1983, a plaintiff must allege the following: "(1) the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy, custom, or practice that amounted to deliberate indifference to the plaintiff's constitutional right; and, (3) that the policy, custom, or practice was the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)); *see also Monell*, 436 U.S. at 691–92.

Municipal liability can attach under *Monell* in three types of circumstances.  First, a municipality may be liable "when implementation of its official policies or established customs inflicts the constitutional injury."  *Monell*, 436 U.S. at 708.  Second a city "may be held liable under § 1983 when 'the individual who committed the constitutional tort was

an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.' " *Clouthier v. Cty of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled on other grounds in Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)).  Third, a plaintiff can prevail by showing certain acts or omission by a local government, such as a pervasive failure to train municipal employees, but only "when such omissions amount to the local government's own official policy." *Id.* at 1249 (9th Cir. 2010).  A plaintiff seeking to bring a Section 1983 claim "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011)).

The Court has already settled that the first policy theory advanced under Count Four(a) must be dismissed because it is barred by the *Rooker-Feldman*, claim preclusion, and issue preclusion doctrines.  *See supra* Sections III.B(2), (D)(1)(b)(ii), D)(1)(c)(iii).  The Court further concluded the second policy theory in Count Four(b) must be dismissed with prejudice because it is *Rooker-Feldman* barred.  *See supra* Section III.B(1).  That leaves the third and fourth theories for scrutiny under Rule 12(b)(6) and *Monell*, which allege the following:

    (c)    the City ratified Attorneys Washburn and Scott's actions as final policy makers when they denied Mr. Stuart access to exculpatory evidence during the Trespass and Failure to Obey Proceedings as part of the City's policies for "due process violation policies" (Doc. 36 at ¶¶ 186, 194); and

    (d)    the City, through Attorneys Washburn and Scott, have "trained and encouraged their subordinates to violate the equal protection and due process rights of others by refusing to recognize and implement well-settled state and federal controlling law regarding statutory and constitutional right" as exemplified by the continued seizure of Plaintiffs' property   (*id*. at ¶¶ 206, 200).

1   Defendants argue that both theories are devoid of any specific facts to support the existence

2   of an unlawful policy or custom, and that Mr. Stuart merely advances legal conclusions

3   that policy makers have enacted policies of suppressing free speech and other constitutional

4   rights.  (Doc. 58 at 14).  Mr. Stuart says his *Monell* claim is sufficient because he alleges

5   the existence of policies, final policy makers, and the City's ratification and failure to train.

6   (Doc. 68 at 20).

7          "An unconstitutional policy need not be formal or written to create municipal

8   liability under Section 1983" but must be "so permanent and well settled as to constitute a

9   'custom or usage' with the force of law."  *Gordon v. Cnty. of Orange*, 6 F.4th 961, 974

10  (9th Cir. 2021) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)).  In other words,

11  "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it

12  must be founded upon practices of sufficient duration, frequency and consistency that the

13  conduct has become a traditional method of carrying out policy."  *Id.* (quoting *Trevino v.*

14  *Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).  Although Mr. Stuart's remaining *Monell* theories

15  allege violations of his due process and equal protection rights, he has not identified a

16  specific policy *maintained by the City* that was the moving force behind those violations.

17  Mr. Stuart generally claims Attorneys Washburn and Scott denied him access to

18  exculpatory evidence during the Trespass and Failure to Obey Proceedings and pursuant

19  to the City's policy to "due process violation policies."  (Doc. 36 at ¶¶ 186, 194).  He asserts

20  they trained subordinates to violate their equal protection rights to seize Plaintiffs' marital

21  property (*id.* at ¶ 206, 200).  However, these specific single instances are insufficient to

22  impose liability upon the City for the alleged "policy" of retaliation by individual city

23  officers.  *See e.g.*, *Kelly v. Cnty. of Riverside*, 2024 WL 3469045, at *3 (C.D. Cal. June 13,

24  2024) (finding the plaintiff failed to adequately plead a *Monell* claim when the complaint

25  alleged a single instance of evidence destruction without specifying what policies or

26  customs of sufficient duration led to the claimed constitutional violations) (citing *Trevino*

27  *v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

28          Mr. Stuart neither identifies the express terms of the City's due process and equal

1   protection violation policies, nor articulates how the individual Defendants' conduct is

2   founded upon practices of sufficient duration, frequency and consistency such that it has

3   become a traditional method of carrying out policy.  *See Gordon*, 6 F.4th at 974.  Mr. Stuart

4   merely asserts legal conclusions that isolated actions were pursuant to a City policy, which

5   are accompanied by a recitation of the *Monell* elements.  (Doc. 36 at ¶¶ 172, 186, 194–196,

6   200, 204–208).  This will not do to state a claim for municipal liability under Section 1983.

7   Counts Four(c) and (d) are therefore dismissed under Rule 12(b)(6).

8           **3.      Counts Two and Six Fail to State a Claim because Mr. Stuart**
9                   **Cannot Allege a Lack of Probable Cause to Establish Malicious**
10                  **Prosecution Claims**

11          Defendants next argue Mr. Stuart fails to state malicious prosecutions claim due to

12   the existence of probable cause and favorable termination.  (Doc. 58 at 15).  Federal and

13   state malicious prosecution claims are intertwined: to adequately plead federal malicious

14   prosecution, a plaintiff must allege the elements of a state malicious prosecution claim and

15   establish that the prosecution was conducted for the purpose of denying plaintiff a specific

16   constitutional right.  *Awabdy*, 368 F.3d at 1066; *Usher v. City of L.A.*, 828 F.2d 556, 562

17   (9th Cir. 1987).  The elements of an Arizona state malicious prosecution are: (1) a criminal

18   prosecution, (2) that terminates in favor of plaintiff, (3) with defendants as prosecutors,[28]

19   (4) actuated by malice, (5) without probable cause, and (6) causing damages.  *Slade v. City*

20   *of Phx.*, 541 P.2d 550, 552 (Ariz. 1975).  The existence of probable cause is a complete

21   defense to malicious prosecution claims under both federal and Arizona law.  *West*, 128 F.

22   Supp. 3d at 1240.

23          Count Two and Six allege, respectively, that the City, Mayor Lane, Attorney

24   Washburn, Attorney Santaella, Attorney Scott, and Officers Cleary, Glenn, and Randall

---

[28] "Malicious prosecution actions are not limited to suits against prosecutors but may be
brought, as here, against other persons who have wrongfully caused the charges to be
filed." *Awabdy*, 368 F.3d at 1066.  To state a claim for malicious prosecution against a
state or local official, a plaintiff must allege they improperly exerted pressure, knowingly
provided misinformation to the prosecutor, concealed exculpatory evidence, or otherwise
engaged in wrongful or bad faith conduct that was actively instrumental in causing the
initiation of legal proceedings.  *Lacy v. Cty. Of Maricopa*, 631 F.Supp.2d 1183, 1195 (D.
Ariz. 2008).

maliciously prosecuted Mr. Stuart for the Trespass and Failure to Obey Charges under federal law, and that the City, Mayor Lane, and Attorney Scott maliciously prosecuted him for the Threats charges under federal and Arizona state law.  (Doc. 36 at ¶¶ 150–64, 226–32).  But because Mr. Stuart cannot allege lack of probable cause for the reasons explained in the prior sections, *see supra* Section III.B(1) and Section III.D(2)(c)(i), he cannot state these claims under Rule 12(b)(6).  Although Mr. Stuart insists his allegations of lack of probable cause must be assumed to be true on a 12(b)(6) motion to dismiss (Doc. 68 at 21), the *Rooker-Feldman* and issue preclusion doctrine warrant dismissal of Counts Two and Six.

### 4.    The Count Three Defendants are not Entitled to Qualified Immunity at this Juncture

Defendants alternatively argue that, even if Mr. Stuart has stated an adequate Section 1983 claim, all individual Defendants in this matter are entitled to qualified immunity under Counts One–Five.

### a.    Legal Standards

"In [Section] 1983 actions, qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "[T]he Supreme Court has 'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.' " *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).  When a defendant asserts qualified immunity in a Rule 12(b)(6) motion to dismiss, the court must accept the allegations in the complaint as true, and "dismissal is not appropriate unless [the court] can determine, based on the complaint itself, that qualified immunity applies." *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999) (quoting *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001))..

1    To determine whether a government official is entitled to qualified immunity, courts
2    must consider: (1) whether the facts alleged show the defendant's conduct violated a
3    constitutional right; and (2) whether that right was clearly established at the time of the
4    violation. *Pearson*, 555 U.S. at 230–32, 235–36.  Courts have discretion in deciding which
5    of these two prongs to address first depending on the circumstances in the particular case
6    at hand. *Id.*  Generally, the first step is to "defin[e] the law at issue in a concrete,
7    particularized manner" as determined—in the case of a motion to dismiss—by the
8    allegations in the complaint. *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th
9    Cir. 2017) (citing *White v. Pauly*, 580 U.S. 73, 79–80 (2017)).

10    An officer "cannot be said to have violated a clearly established right unless the
11    right's contours were sufficiently definite that any reasonable official in his shoes would
12    have understood that he was violating it, meaning that existing precedent . . . placed the
13    statutory or constitutional question beyond debate." *City and Cty. of San Francisco, Cal.
14    v. Sheehan*, 575 U.S. 600, 611 (2015) (omission in original) (internal quotations and
15    citation omitted). This is an "exacting standard" that "gives government officials breathing
16    room to make reasonable but mistaken judgments by protecting all but the plainly
17    incompetent or those who knowingly violate the law." *Id.* (internal quotations omitted).
18    Although it is not necessary that a prior decision rule "the very action in question" be
19    unlawful for a right to be clearly established, *Anderson v. Creighton*, 483 U.S. 635, 640
20    (1987), the Supreme Court has repeatedly cautioned that courts should not define clearly
21    established law at a high level of generality, *White*, 580 U.S. at 79–80 (per curiam).  *See
22    also Hamby v. Hammond*, 821 F.3d 1085, 1095 (9th Cir. 2016) (plaintiff need not find case
23    law with identical facts, but the further afield existing precedent lies the more likely that
24    official's acts fall within vast zone of conduct that is constitutional).

25    Once the right at issue is defined, courts must then "identify a case where an officer
26    acting under similar circumstances as [the defendant] was held to have violated" that right.
27    *Shafer*, 868 F.3d at 1117 (citing *White*, 580 U.S. at 79). If there is no such case, then the
28    right was not clearly established. *Id.* at 1117–18.  "This is not to say that an official action

1    is protected by qualified immunity unless the very action in question has previously been

2    held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be

3    apparent."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal citations omitted).

4                    **b.      The Parties' Arguments**

5            Mr. Stuart argues Defendants violated his clearly established rights to be free from

6    retaliatory, malicious, and selective prosecutions; rights to be free from unlawful seizure

7    of property; and rights to access exculpatory evidence.  (Doc. 69 at 25).   Defendants

8    contend Mr. Stuart's allegations are insufficient to survive qualified immunity because he

9    simply relies on "general platitudes."   (Doc. 70 at 10).   They contend that because

10   Mr. Stuart did not have clearly established rights to (a) present on the SOP Initiative at the

11   2017; (b) refused to leave the 2017 Meeting; or (c) make threatening statements against the

12   City, Mr. Stuart consequently did not have a right to be free from prosecution based on that

13   conduct and all individual Defendants have immunity from Counts One, Two, Four, and

14   Five.   (*Id.*)   Defendants also argue all individual Defendants are entitled to qualified

15   immunity under Count Three because "[t]here is no question that Mr. Stuart's guns and

16   ammunition were lawfully detained by the City, and that Mr. Stuart was not entitled to

17   possess firearms or ammunition."  (Doc. 58 at 17).

18           Thus far, this Order has found that Mr. Stuart's Section 1983 claims under

19   Counts One, Two, Four, and Five should be dismissed either under the *Rooker-Feldman,*

20   *Heck*, and/or *res judicata* doctrines. *See supra* Sections III.B, III.C, III.D.  The Court need

21   not conduct a qualified immunity analysis as to those claims to find they should be

22   dismissed.  The claim that remains unanalyzed is Plaintiffs' Count Three unlawful seizure

23   claim.  The Court will examine whether the relevant individual Defendants are entitled to

24   qualified immunity under Count Three only.

25                    **c.      Plaintiffs' Fourth Amendment Rights under Count Three**

26           Count Three alleges, Attorney Scott, Attorney Santaella, and City Manager

27   Thompson (collectively the "Count Three Individual Defendants") violated Plaintiffs'

28   Fourth Amendment rights when they unreasonably seized their community property (guns

and ammunition) between May 6–August 5, 2021.  (Doc. 36 at ¶¶ 165–178).  The Court will begin with an overview of Fourth Amendment case law at the time of the alleged seizure before addressing the qualified immunity prongs.  *See Shafer*, 868 F.3d at 1117.

### i.   The Fourth Amendment is Implicated by Unreasonable Delays in Returning Property Lawfully Seized

The Fourth Amendment safeguards the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  A "seizure" of property occurs "when there is some meaningful interference with an individual's possessory interests in that property."  *United States v. Jefferson*, 566 F.3d 928, 933 (9th Cir. 2009) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).  "[A] seizure [that is] lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests."  *United States v. Jacobsen*, 466 U.S. 109, 124 (1984).  The Ninth Circuit held in *Brewster v. Beck* that even when the initial seizure of property is lawful, "[a] seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force.  Thereafter, the government must cease the seizure or secure a new justification."  859 F.3d 1194, 1197 (9th Cir. 2017) (citing *Jacobsen*, 466 U.S. at 124). Under this principle "[t]he Fourth Amendment 'is implicated by a delay in returning the property, whether the property was seized for a criminal investigation, to protect the public, or to punish the individual.' "  *Brewster*, 859 F.3d at 1197 (quoting *Sandoval v. Cty. of Sonoma*, 72 F. Supp. 3d 997, 1004 (N.D. Cal. 2014))

### ii.   Clearly Established Right

The Court will first address whether Plaintiffs had clearly established rights at under the Fourth Amendment at the time of the alleged seizure of their community property.  *See Pearson*, 555 U.S. at 232.  Plaintiffs do not argue the initial seizure of their guns and ammunition equated to a constitutional violation.  Indeed, Plaintiffs' property was seized pursuant to the 2019 Release Order that was issued in the Trespassing Prosecution and

1    continued during the Threats Prosecution.  (Doc. 36 at ¶¶ 114–115).  Plaintiffs rather argue

2    they had a clearly established right to recover their property after the 2019 Release Order

3    expired on May 7, 2021. (Doc. 68 at 23).[29]

4           Defendants do not dispute Plaintiffs' guns remained "seized" for the purpose of the

5    Fourth Amendment until its release on August 5, 2021.  (*See* Doc. 58 at 17).  Defendants'

6    position is Plaintiffs had "no clearly established right to receive firearms lawfully seized

7    immediately upon demand."  (Doc. 58 at 17).  However, that position is contradicted by

8    *Brewster*, which held a state law mandating a 30-day impound after a vehicle was lawfully

9    seized an unconstitutional warrantless seizure for Fourth Amendment purposes. 859 F.3d

10   at 1196–97.  *Brewster* relied on *United States v. Dass*, which held officers violated the

11   Fourth Amendment when they validly seized packages that they suspected contained

12   marijuana but continued to seize those packages for seven to twenty-three days thereafter

13   without a warrant.  *Id*. (citing 849 F.2d 414, 414–15 (9th Cir. 1988)).  Because it was settled

14   in the Ninth Circuit that unreasonable delays in returning lawfully seized property pose

15   constitutional violations, the Court finds Plaintiffs' Fourth Amendment right to recover

16   their property were clearly established upon expiration of 2019 Release Order.  *See*

17   *Brewster*, 859 F.3d at 1197 ("The Fourth Amendment doesn't become irrelevant once an

18   initial seizure has run its course.").

19                              **iii.     Constitutional Violation**

20          The remaining issue is whether the Count Three Individual Defendants violated

21   Plaintiffs' Fourth Amendment rights when they continued to seize their guns from May 7–

22   August 5, 2021.  *See Pearson*, 555 U.S. at 232.   It is undisputed that the 2019 Release

23   Order expired on May 6, 2021, and "[a] seizure conducted without a warrant is per se

24   ────────────────────

25   [29] Mr. Stuart also cites to *Cunningham v. Gates* to argue Attorney Scott, Attorney Santaella
     and City Manager Thompson violated his constitutional rights when they knew Mr. Stuart's
     Fourth Amendment property rights were being ongoingly violated and failed to intercede.
26   (Doc. 68 at 23 (citing 229 F.3d 1271, 1289 (9th Cir. 2000)).  However, *Cunningham* stands
     for the proposition that "police officers have a duty to intercede when their fellow officers
27   violate the constitutional rights of a suspect or other citizen" and "can be held liable for
     failing to intercede only if they had an opportunity to intercede."  229 F.3d at 1289–90.
28   The present matter is district because Attorney Scott, Attorney Santaella and City Manager
     Thompson are not police officers.

1    unreasonable under the Fourth Amendment—subject only to a few specifically established

2    and well-delineated exceptions." *Brewster*, 859 F.3d at 1196 (quoting *United States v.*

3    *Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001)).  Thus, to prevail on their qualified immunity

4    defense, the Count Three Individual Defendants bear the burden of demonstrating their

5    continued seizure "comes under one of the few specifically established exceptions to the

6    warrant requirements" such that it was reasonable.  *Hawkins*, 249 F.3d at 872 (quoting

7    *United States v. Huguez-Ibarra*, 954 F.2d 546, 551 (9th Cir. 1992)).

8          Defendants seem to imply the seizure was reasonable under the City's policy "to

9    withhold firearms until it is clear that the person seeking their return clears a mandatory

10   law enforcement background check."  (Doc. 58 at 17 (citing City of Scottsdale, *Claiming*

11   Property, Property and Evidence, https://ww2.scottsdaleaz.gov/police/property-

12   evidence#:~:text=Claiming%20Property&text=Property%20may%20be%20picked%20u

13   p,call%20480%2D312%2D5888.).[30]  But apart from reciting the policy, Defendants do not

14   allege or provide evidence showing Mr. Stuart failed to clear the requisite background

15   check.  Defendants also appear to justify their actions based the special needs exception to

16   the Fourth Amendment for conduct "beyond the need for normal law enforcement."  (Doc.

17   58 at 17 (citing *Vore v. U.S. Dep't of Justice*, 281 F. Supp. 2d 1129, 1132 (D. Ariz. 2003)).

18   But Defendants do not explain how the exception applies to this matter apart from naming

19   the doctrine in a parenthetical citation.  (*Id*.)   Nor do Defendants explain how the special

20   needs exception or firearms policy behind this policy supported each Count Three

21   Defendant's decision to withhold Mr. Stuart's guns and ammunition from him.

---

[30] For claiming firearms, the City's policy states as follows:

> Firearms are released according to the Gun Control Act 18 USC 922(g) and Arizona Revised Statute 13-3101. For firearms that are releasable, the listed owner must pass a mandatory law enforcement background check. Once the background check is successfully passed, the owner will be contacted to schedule an appointment to pick up the firearm. To inquire about your impounded firearm, call 480-312-5888.

City of Scottsdale, *Claiming* Property, Property and Evidence, https://ww2.scottsdaleaz.gov/police/property-evidence#:~:text=Claiming%20Property&text=Property%20may%20be%20picked%20up,call%20480%2D312%2D5888.).

1    The Court finds Plaintiffs have stated a claim for Fourth Amendment violations

2    under Count Three.  They claim Mr. Stuart contacted the Scottsdale police several times

3    after the 2019 Release Order expired to request they return Plaintiffs' guns and ammunition

4    to no avail.  (Doc. 36 at ¶¶ 117–125).  Plaintiffs further claim their property remained

5    seized under instruction by the Count Three Individual Defendants.  (*Id.* at ¶¶ 165–178).

6    When taking these allegations as true, and based on the existing circuit law, the Count

7    Three Individual Defendants have not met their burden to establish qualified immunity

8    from the face of the SAC.  *Morley*, 175 F.3d at 759.  Defendants' Motion to Dismiss will

9    be denied on this basis.  Whether the Count Three Individual Defendants are entitled to

10   qualified immunity requires further factual development.

11                    **5.    Absolute Immunity**

12   Defendants' final argument is that Former Scottsdale City Attorney Washburn and

13   current Scottsdale City Attorney Scott are entitled to absolute immunity on Mr. Stuart's

14   malicious prosecution claims under Counts Two and Six.  However, the Court has already

15   settled those Counts should be dismissed either under the *Rooker-Feldman, Heck*, and/or

16   *res judicata* doctrines. *See supra* Sections III.B, III.C(1), III.D(1)(c)(i).  The Court need

17   not conduct an absolute immunity analysis on these claims to find they should be

18   dismissed.

19                    **F.    Dismissal with Prejudice**

20   The Court has concluded that Counts One, Two, Four, Five, and Six of the SAC

21   must be dismissed.  Count One is *Rooker-Feldman* and *Heck* barred.  Count Two is barred

22   by the *Rooker-Feldman*, *Heck*, and collateral estoppel doctrines.  Count Four is barred by

23   the *Rooker-Feldman*, claim preclusion, and collateral estoppel doctrines or otherwise fails

24   to state a claim under Rule 12(b)(6).  Count Five is barred by the *Rooker-Feldman* and

25   claim preclusion doctrines.  Count Six is *Rooker-Feldman*-barred.

26   In line with the principle that *pro se* filings should be liberally construed, the Court

27   must grant leave to amend if it appears that the plaintiff can correct the defects in the

28   complaint.  *Lopez*, 203 F.3d at 1130.  However, dismissal with prejudice is appropriate it

appears a claim or complaint cannot be saved by amendment. *See Sylvia v. Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013). "Prolix, confusing complaints" such as those repeatedly filed by Mr. Stuart, "impose unfair burdens on litigants and judges" because they can cause confusion and unnecessary expense of judicial and attorney resources. *McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir. 1996). If the prolixity of a complaint requires "superhuman patience, effort, and insight" to make paragraph-by-paragraph responses, the district court has discretion to dismiss the complaint. *See Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (citing *Mendez v. Draham*, 182 F. Supp. 2d 430, 433 (D. N.J. 2002)). This is particularly true when the Court has already rejected proposed pleadings and has provided instructions to Plaintiff regarding remedying the pleading errors. *See Williams v. Cty. of Los Angeles Dep't of Public Soc. Servs.*, 2016 WL 8229038, *10 (C.D. Cal., Dec. 21, 2016) (dismissing plaintiff's action with prejudice when plaintiff failed to present amended complaint in compliance with court direction regarding remedying pleading defects); *Serpa v. SBC Telecommunications, Inc.*, 2004 WL 2002444, *7 (N.D. Cal., Sep. 7, 2004) (recognizing that, when repeated efforts to amend do not correct a deficiency, the court has discretion to deny a motion to amend).

To the extent Plaintiffs' Counts are dismissed on *res judicata* grounds, those claims must be dismissed with prejudice. Ordinarily, dismissal due to *Rooker-Feldman* and *Heck* result in dismissal without prejudice. *See Ford v. Cohn*, 44 F. App'x 145, 148 (9th Cir. 2002) (explaining that dismissal for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine "is not an adjudication of the merits and therefore should be entered without prejudice"); *see Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995) (explaining claims that have not yet accrued under *Heck* should be dismissed without prejudice to allow a plaintiff to reassert the claim in the event he ever succeeds in invalidating his conviction). But because the Threats Injunction, Threats Appeal, State Court Trespass and Failure to Obey Judgment, and Trespass and Failure to Obey Appeal are final state court judgments, any amendment to the claims that are barred by *Rooker-Feldman* and *Heck* in this matter would be futile. The Court will therefore dismiss those

claims with prejudice.  *See Black v. Haselton*, 663 F. App'x 573 (9th Cir. 2016) (affirming the district court's decision to deny leave to amend and enter dismissal with prejudice because the *Rooker-Feldman* doctrine was "fatal to Plaintiff' claims and it [was] clear that th[o]se deficiencies could not be cured by amendment").  Furthermore, any claims in the SAC that lie beyond the reach of *res judicata, Rooker-Feldman*, or *Heck*, will be dismissed with prejudice under Rule 8.

When granting Plaintiffs leave to file the present SAC in its June 29, 2023, Order (Doc. 35), the Court explicitly instructed Plaintiffs to "remove the claims asserted in the FAC that have been adjudicated and are now precluded so that the Court can properly and accurately assess what claims, if any, should remain." (*Id.* at 8).  The Court further cautioned Plaintiffs that they "[were] not authoriz[ed] to add any new claims or parties" and the Court "[would] not look favorably on amendments to claims that have already been litigated and/or adjudicated in [*Stuart I* and *Stuart II*]." (*Id.*)  Plaintiff blatantly disregarded these instructions by attempting to add new claims (Counts Seven and Eight, which were stricken in the Court's February 13, 2024, Order) and failing to remove the multitude of allegations that were not only brought and decided in *Stuart I*, and *Stuart II*, but also disposed of in the State Court Trespass and Failure to Obey Judgment, Trespass and Failure to Obey Appeal, Threats Injunction, and Threats Appeal.  Therefore, the Court will not allow Plaintiffs leave to amend any portions of Counts One, Two, Four, Five, and Six. Those Counts will be dismissed with prejudice according to the Court's authority under Rule 8 and the need to protect against unfair burdens on litigants and judges.  *See* Fed. R. Civ. P. 8(a), (d)(1); *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (affirming dismissal with prejudice of amended complaint that did not comply with Rule 8(a)); *see also Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).  Indeed, this Court has provided Mr. Stuart with a plethora of opportunities to bring claims against Defendants in this action and others, most of which have been concluded to be meritless.

### G.    Conclusion

The only claim that remains is Plaintiffs' Count Three for unlawful seizure against Attorney Scott, Attorney Santaella, and City Manager Thompson—all other Counts and named Defendants are dismissed with prejudice from this action.  Although the Count Three Individual Defendants have not shown they are entitled to qualified immunity at this juncture, that is not to say they cannot re-argue their entitlement at a later stage of litigation once there has been further factual development.

Accordingly,

**IT IS ORDERED** that the Motion to Dismiss (Doc. 58) is **GRANTED** in part and **DENIED** in part as stated herein.  Counts One, Two, Four, Five, and Six **are DISMISSED with prejudice.**  Plaintiff Mark Stuart and Plaintiff Virginia Stuart's Count Three remains.  A Scheduling Conference will be set by separate Order.

**IT IS FINALLY ORDERED** that Defendants City of Scottsdale; Former Scottsdale Mayor Lane; Scottsdale City Councilmembers Littlefield, Whitehead, Milhaven, Caputi, Janik, and Durham; Scottsdale Mayor Ortega; Scottsdale Assistant City Attorney Santaella; Former Scottsdale Police Chief Rodbell; and Scottsdale Police Officers Cleary, Glenn, and Randall are **DISMISSED** from this action.  The remaining Defendants are Scottsdale City Manager Thompson, Former Scottsdale City Attorney Washburn, and Scottsdale City Attorney Scott.

Dated this 9th day of September, 2024.

Honorable Diane J. Humetewa
United States District Judge