**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark E Stuart, et al., | No. CV-21-01917-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Scottsdale, et al., | |
| Defendants. | |

*Pro se* Plaintiffs Mark Stuart and Virginia Stuart have filed a Motion under Federal Rule of Civil Procedure 59(e) ("Motion") (Doc. 75) seeking to amend the Court's September 9, 2024, Order ("September Order") (Doc. 71). In the September Order, the Court dismissed all but one of Plaintiffs' claims: a 42 U.S.C. § 1983 claim in Count Three against individual Defendants City Attorney Scott ("Scott"), Scottsdale Assistant City Attorney Santaella ("Santaella"),[1] and Scottsdale City Manager Thompson ("Thompson"). (*Id.*) Plaintiffs' Count Three alleges that Defendants City of Scottsdale (the "City"), Scott, Santaella, and Thompson violated Plaintiffs' Fourth Amendment rights when they unreasonably withheld Plaintiffs' guns and ammunition for ninety days. (Doc. 71 at 11; Doc. 36 ¶¶ 165–78). Plaintiffs say the Court erred by failing to recognize that Count Three also alleges a Fourth Amendment unreasonable seizure claim against the City under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ("*Monell*"). (Doc. 75 at 4). Defendants

---

[1] The Court initially stated Count Three could proceed against Defendant Bruce Washburn; the Order was amended on October 22, 2024, to correctly state Count Three could proceed against Defendant Santaella. (Doc. 86).

disagree and say Plaintiffs' Count Three *Monell* claim suffers from the same deficiencies as Plaintiffs' Count Four's *Monell* claim, which the Court dismissed in its September Order. (Doc. 82).[2] The Court agrees.

**I.     Legal Standards**

Federal Rule of Civil Procedure 59 provides that a party may move "to alter or amend a judgment" or dismissal with prejudice within 28 days after the order or judgment is entered. Fed. R. Civ. P. 59(e). Because Rule 59(e) does not identify "specific grounds for a motion to amend or alter. . ., the district court enjoys considerable discretion in granting or denying the motion." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (internal quotation marks and citation omitted). Caselaw generally recognizes that a Rule 59(e) motion to alter or amend a judgment may be granted in four limited circumstances: (1) when necessary to correct manifest errors of law or fact upon which the judgment rests; (2) when necessary to present newly discovered or previously unavailable evidence; (3) when necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law. *Id*. Rule 59(e) may not, however, "be used to relitigate old matters, or to raise arguments or present evidence that could have been made prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation omitted); *see also Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (noting that Rule 59(e) offers an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources") (internal quotation omitted); *Bollenbacher v. Comm'r of Soc. Sec.*, 621 F. Supp. 2d 497, 501 (N.D. Ohio 2008) (stating that a Rule 59(e) "motion is not a substitute for appeal and does not allow the unhappy litigant to reargue the case"). Nor should parties ask a court "to rethink what the court had already thought through—rightly or wrongly." *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995).

Indeed, disagreement with an order is an insufficient basis for reconsideration under Rule 59. *Ariz. Dream Act Coal. v. Brewer*, 945 F. Supp. 2d 1049, 1078 (D. Ariz. 2013).

---

[2] Plaintiffs also filed a Reply in support of their Motion (Doc. 88).

Such disagreements should be dealt with in the normal appellate process. *See Ramsey v. Arizona*, 2006 WL 2711490, at *1 (D. Ariz. Sept. 21, 2006). Denial of a motion for reconsideration under Rule 59(e) will not be reversed absent a showing of abuse of discretion. *See Allstate Ins. Co.*, 634 F.3d at 1111. Thus, the moving party has a "high hurdle" in order to obtain post-judgment relief. *See Weeks v. Bayer*, 246 F.3d 1231, 1236 (9th Cir. 2001).

## II.     Discussion

Plaintiffs argue relief is justified under Rule 59(e) to correct manifest errors of fact that the Court overlooked in failing to ascertain that Plaintiffs' Count Three alleged a *Monell* claim against the City. Plaintiffs say that though "the Court acknowledged that [the City of] Scottsdale was named in Count 3, [it] did not analyze the Monell pleading under Count III." (Doc. 75 at 4). Defendants says there was no error because like Count Four, Plaintiffs' pleading fails to identify what the purported policy is that led to Plaintiffs' constitutional violation. (Doc. 82 at 3 (querying whether the purported policy is "a declination to hand firearms over on demand? After some period of time? Or is it the ammunition? Or both? The SAC does not explain, and Plaintiffs don't bother to tell us.").

Plaintiffs are correct that the Court's Order did not assess whether Count Three sufficiently pled a *Monell* claim against the City. The fault of this largely lies with Plaintiffs' inarticulate pleading, a fact that Plaintiffs seem to concede. (*See* Doc. 75 at 9 (stating "Plaintiffs' presentation is somewhat convoluted."). For example, unlike Count Four of the SAC, which is clearly titled "Violation of 42 U.S.C. §1983 Monell Claim against City of Scottsdale," Count Three is simply titled "Violation of 42 U.S.C. § 1983 Fourth Amendment Unreasonable Seizure." (Doc. 36 at 24 and 26). *But see Shoshone-Bannock Tribes v. Fish & Game Comm'n*, 42 F.3d 1278, 1284–85 (9th Cir. 1994) (noting that although the caption of a complaint should be considered, it is generally not controlling).

Given Plaintiffs' self-described "convoluted" pleading, Defendants understandably were not on notice of a *Monell* claim in Count Three. Consequently, Defendants' Motion

to Dismiss (Doc. 58) did not specifically seek to dismiss a *Monell* claim against the City in Count Three; instead, Defendants generally argued that the SAC failed to sufficiently allege any government policy against the City to give rise to Section 1983 liability. (Doc. 58 at 14 ("Despite asserting that a number of the defendants are "official policy makers" for the City, the SAC makes no attempt to allege what policy or practice is the purported source of Plaintiffs' injury. Instead, the SAC conclusorily [sic] asserts that policy makers have enacted policies of suppressing free speech and other constitutional rights."). The Court's September Order agreed with Defendants as to Plaintiffs' Count Four and dismissed that *Monell* claim against the City. (Doc. 71). The Court described Count Four as follows:

> Count Four is a Section 1983 claim that the City maintained unlawful policies in violation of *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978) ("*Monell*"). (Doc. 36 at ¶¶ 179–215). When liberally construing Count Four, the Court gleans four theories of *Monell* violations, which the Court will hereafter refer to as Count Four(a), (b), (c), and (d), respectively:
>
> (a)  the City ratified Mayor Lane and Attorney Washburn's actions as final policy makers when they carried out the Trespass and Failure to Obey Charges against Mr. Stuart as part of the City's "speech suppression policies" and that a civil citation received on October 22, 2016, is another example of Defendants' speech suppression policies (*id*. at ¶¶ 184, 187–190, 193).
>
> (b)  the City ratified Mayor Lane and Attorney Scott's actions as final policy makers when they carried out the Threats Charges against Mr. Stuart as part of the City's "speech suppression policies" (*id*. at ¶¶ 185, 187, 191–92);
>
> (c)  the City ratified Attorneys Washburn and Scott's actions as final policy makers when they denied Mr. Stuart access to exculpatory evidence during the Trespass and Failure to Obey Proceedings as part of the City's policies for "due process violation policies" (*id*. at ¶¶ 186, 194); and
>
> (d)  the City, through Attorneys Washburn and Scott, have "trained and encouraged their subordinates to violate the equal protection and due process rights of others by refusing to recognize and implement well-

>settled state and federal controlling law regarding statutory and constitutional right" as exemplified by the continued seizure of Plaintiffs' property (*id.* at ¶¶ 206, 200).

(Doc. 71 at 11). The Court found that the first policy theory under Four(a) was barred by the *Rooker-Feldman*, claim preclusion, and issue preclusion doctrines, and the second policy theory in Four(b) was *Rooker-Feldman* barred. (*Id.* at 53). The Court also dismissed the policy theories stated in Four(c) and (d) for failure to state a claim, on the grounds that they failed to identify the express terms of the City's due process and equal protection violation policies and failed to articulate how the individual Defendants' conduct was founded upon a practice of sufficient duration, frequency and consistency such that those policies had become a traditional method of carrying out those policies. (*Id.* at 54–55).[3] However, because the SAC lacked similar allegations that clearly referenced the City's property retention policies, the Court did not similarly assess the sufficiency of a *Monell* claim against the City in Count Three of the SAC.

The Court acknowledges that Count Three is alleged against the City as well as the Individual Defendants. Construed liberally, the Court should have assessed whether Count Three withstood Defendants' Rule 12(b)(6) challenge. Accordingly, the question is now whether the Court clearly erred in dismissing the City, or whether Count Three sufficiently alleges a *Monell* claim against it.

### A. Facts Relevant to Count Three

In their SAC, Plaintiffs allege that Ms. Stuart turned over Plaintiffs' guns and ammunition to Scottsdale police around November 8, 2019. (Doc. 26 ¶ 113). Scottsdale police lawfully retained the guns and ammunition pursuant to the terms of a 2019 Release Order that was issued in the Trespassing Prosecution against Mr. Stuart. (*Id.* ¶ 114; *see*

---

[3] The Court also denied Plaintiffs' request to amend Count Four, noting that when the Court previously granted Plaintiffs leave to amend their complaint, they "blatantly disregarded" the Court's instructions by adding new claims and failing to remove those claims that had already been brought and decided in Plaintiffs' and Mr. Stuart's other federal and state cases. (Doc. 71 at 64). The Court found that allowing further amendment would unfairly burden the Court and the litigants and were unjustified in light of the many opportunities Mr. Stuart had been afforded to amend in this case and his many others. (*Id.*)

*also* September 9, 2024, Order at Doc. 71 at 59 (detailing the Trespassing and Threats Prosecutions against Mr. Stuart)). When the 2019 Release Order expired on May 7, 2021, Plaintiffs say they contacted the Scottsdale Police "several times" about the return of their property. (*Id.* ¶ 116). Plaintiffs allege Scottsdale police said they "were researching the issue of whether Scottsdale could retain the Stuarts guns and ammunition;" that "they knew they had no lawful right to possess the Stuarts guns and ammunition;" and they otherwise "refused to cooperate with Stuart and return the Stuarts property to them." (*Id.* ¶¶ 119–21). The police returned Plaintiffs' guns (but not the ammunition) on July 2, 2021. (*Id.* ¶¶ 116, 118, 112). Plaintiffs say that when they sought to obtain the ammunition "Scottsdale agents" told them it was city policy to retain the ammunition. (*Id.* ¶ 123). Plaintiffs allege that only after "threatening to sue [Defendant City Attorney Scott], did Scott instruct the Scottsdale Police to release the ammunition to Plaintiffs." (*Id.* ¶ 123–24). The ammunition was released to Plaintiffs on August 5, 2021. (*Id.* ¶ 125).

    **B.    The Sufficiency of Plaintiffs' Count Three *Monell* Claim Under Rules 8 and 12(b)(6)**

Rule 8 requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). As Plaintiffs are aware, while Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Indeed, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2005)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is]. . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations

may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

The *Iqbal* pleading standard applies to *pro se* complaints, but they "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Although entitled to "great leeway," a *pro se* litigant's pleadings "nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

When ruling on a motion to dismiss, the court accepts all factual allegations in the complaint as true and views the pleadings in light most favorable to the nonmoving party. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). That rule does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678. When considering a motion to dismiss, a district court "consider[s] only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (*quoting Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)).

In its September Order, the Court found that Count Three sufficiently stated a Fourth Amendment claim against Individual Defendants Scott, Santaella, and Thompson. (Doc. 71 at 62). But a municipality may not be sued under Section 1983 solely because a constitutional injury may have been inflicted by one of its employees or agents. *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). Liability only attaches when the execution of a municipality's policy or custom causes the constitutional injury. *Monell*, 436 U.S. at 694; *Miranda v. City of Cornelius*, 429 F.3d 858, 868 (9th Cir. 2005). Municipal liability can attach under *Monell* in three types of circumstances. First, a municipality may be liable "when implementation of its official policies or established customs inflicts the constitutional injury." *Monell*, 436 U.S. at 708. Second, a city "may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's

unconstitutional decision or action and the basis for it.' " *Clouthier v. Cty of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), overruled on other grounds in *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (cleaned up)). Third, a plaintiff can prevail by showing certain acts or omission by a local government, such as a pervasive failure to train municipal employees, but only "when such omissions amount to the local government's own official policy." *Id.* at 1249 (9th Cir. 2010).

A policy is "deliberate choice to follow a course of action. . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008) (same). A custom is "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 890 (9th Cir. 1990). An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (internal quotation marks omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). However, "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the [municipality] and the opportunity to conform to constitutional dictates.' " *Connick v. Thompson*, 563 U.S. 51, 63 n.7 (2011).

Allegations concerning *Monell* liability based on the existence of a policy are subject to the pleading requirements of *Twombly/Iqbal*. As the Ninth Circuit has explained, even in the context of a *Monell* claim, a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that

it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (*quoting Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). While the Ninth Circuit previously had a liberal pleading standard for *Monell* claims, "[c]ourts in this circuit now generally dismiss claims that fail to identify the specific content of the municipal entity's alleged policy or custom." *Little v. Gore*, 148 F. Supp. 3d 936, 957 (S.D. Cal. 2015) (citation omitted).

In Count Three, Plaintiffs allege that the City's "retention of the guns and ammunition after May 6, 2021, until about August 5, 2021" violated their Fourth Amendment rights against unreasonable seizure. (*Id.* ¶ 167). They say the City's "continued seizure of the Stuarts' property after July 2, 2021 was pursuant to an official city policy, according to Scottsdale agents working in the police department property division." (*Id.* ¶ 172). Without more, in their Rule 59 Motion, Plaintiffs claim that reasonable inferences can be made from the SAC's allegations such that the City can also be liable under ratification or failure-to-train theories. (Doc. 75 at 7–8).

As they did in their Motion to Dismiss, Defendants argue that nothing in Plaintiffs' SAC "identify something that could be described as a 'policy,' much less one that caused Plaintiffs' alleged injuries." (Doc. 82 at 4). Defendants also argue that nothing in Plaintiffs' SAC suggests this was anything but an "isolated incident of not returning Mr. Stuart's firearms and ammunition" and that it cannot be inferred this such a "widespread practice that it has taken on life as a 'traditional method of carrying out policy.' " (Doc. 82 at 4).

### 1. Policy, Practice or Custom

Like the allegations in Count Four, Plaintiffs' conclusory statement that "an official city policy" was invoked by Scottsdale agents to justify their alleged unlawful retention of Plaintiffs' guns is not sufficient to sustain a *Monell* claim against the City under a policy, practice, or custom theory. In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere formulaic recitations of the existence of an unlawful policy. *A.E. ex rel. Hernandez*, 666 F.3d at 637. Plaintiffs ask the Court to

make "reasonable inferences" of a City policy from two allegedly unlawful seizures of their property: (1) when the City's refused to immediately return their guns and ammunition after the 2019 Release Order expired; and (2) on July 2, 2021, when the City refused to return their ammunition after returning their guns. They say these two instances and the statements by police, show a "pattern of behavior" of illegal property retention policy. Not so. It is well-established in the Ninth Circuit that a plaintiff asserting a *Monell* claim must allege *facts* that would support the existence of the alleged policy, practice, or custom. *See, e.g.*, *A.E. ex rel. Hernandez*, 666 F.3d at 637; *Dougherty v. City of Covina*, 654 F.3d 892, 900–01 (9th Cir. 2011) (holding that plaintiff's *Monell* claim "lacked any factual allegations regarding key elements of the *Monell* claims, or, more specifically, any facts demonstrating that his constitutional deprivation was the result of a custom or practice of the City of Covina or that the custom or practice was the 'moving force' behind his constitutional deprivation"). *See also Hyer v. City & Cnty. of Honolulu*, 2020 WL 7038953, *6 (D. Hawaii 2020) (noting that "[s]ince *Iqbal*, courts in the Ninth Circuit have repeatedly rejected *Monell* claims based on conclusory allegations that lack factual content from which one could plausibly infer municipal liability") (citations omitted); *Brown v. City of Mariposa*, 2019 WL 4956142, *4 (E.D. Cal. 2019) (noting "while the Court recognizes the inherent difficulty of identifying specific policies absent access to discovery, that is nonetheless the burden of plaintiffs in federal court") (citations omitted).

Here, the two incidents cited by Plaintiffs do not state facts that plausibly show an unlawful property retention policy practiced by agents or officers of the Scottsdale police department caused Plaintiffs' injuries. Indeed, Plaintiffs Count Three alleges no facts identifying the policy or policies allegedly referenced by "Scottsdale agents," nor do they provide facts showing that such practices or customs have been in place for a sufficient duration and with a sufficient consistency such that they could plausibly be a traditional method of carrying out that policy. *Trevino*, 99 F.3d at 918 (holding that *Monell* liability based on an "improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the

conduct has become a traditional method of carrying out policy."). *See also Blanchard v. City of Los Angeles*, 2021 WL 871997, *3 (C.D. Cal. 2021) ("While the FAC cites to numerous instances, reports, and cases concerning excessive force and others that have indicated a tendency to employ excessive force by Sheriff's Deputies, these do not rise the level of specificity for *Monell* claims."). Simply put, Plaintiffs have not plead sufficient facts from which any reasonable inferences could be drawn nor to put Defendants on notice of a *Monell* claim. Moreover, the two isolated instances upon which Plaintiff now relies, is of insufficient frequency and consistency to show a practice or custom. So, to the extent Count Three is premised on a policy, practice or custom theory, Plaintiffs fail to state a claim.

### 2. Failure to Train or Supervise

Municipal liability may also arise when a city fails to adequately train or supervise its employees. *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006) ("A failure to train or supervise can amount to a policy or custom sufficient to impose [§ 1983] liability.") (citation omitted). A plaintiff pursuing liability based on a failure to train or supervise must allege that the municipality exhibited " 'deliberate indifference to the rights of persons' with whom those employees are likely to come into contact." *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (citation omitted).

" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). It may be shown if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). Additionally, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (quoting *Brown*, 520 U.S. at 409). Plaintiffs are required to show that "policymakers were on actual or

constructive notice that a particular omission in their training program causes. . . employees to violate citizens' constitutional rights," but chose not to remedy the omission. *Id.* at 61. "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62. Notably, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 61.

Plaintiffs allege that "[i]n 2021, [City Attorney] Scott was aware that Scottsdale policies and practices on retention of criminal suspects property after a case has terminated violated Ninth Circuit precedent . . . [and] [d]espite her knowledge of the unlawfulness of policy property retention practices, Scott agreed to allow Scottsdale police to continue to violate unreasonable seizure law. Scott's deliberate indifference to the Fourth Amendment rights of criminal suspects directly caused the unreasonable continued seizure of the Stuarts property." (Doc. 36 ¶ 168). Plaintiffs further allege that "In July 2021, Mark Stuart asked the police to call [Assistant City Attorney] Luis Santaella to get him to release the Stuarts ammunition. The police in the property and evidence office called Santaella, while Stuart waited for the police to release the Stuarts ammunition. Santaella instructed the police not to release the Stuarts ammunition to them." (*Id.* ¶ 169). In their Motion, Plaintiffs argue that a "reasonable inference" from these allegations is that the City "is aware of the need to update its property retention policies and to provide training to Scottsdale police of Ninth Circuit Fourth Amendment law but refuses to do so." (Doc. 75 at 7).

The Court agrees with Defendants that these allegations do not sufficiently state a failure-to-train *Monell* claim. First, as noted, the SAC fails to provide non-conclusory allegations of a pattern of similar constitutional violations, and such a pattern alone is "ordinarily necessary" to support a failure-to-train claim. *Connick*, 563 U.S. at 62. *See also Wettstein v. City of Riverside*, 2020 WL 2199005, *5 (C.D. Cal. 2020) ("While there is no *per se* rule for the amount of unconstitutional incidents required to establish a custom under *Monell*, one or two incidents ordinarily cannot establish a custom, while more

incidents may permit the inference of a custom, taking into account their similarity, their timing, and subsequent actions by the municipality. The Ninth Circuit and district courts within the Ninth Circuit have repeatedly declined to infer a custom of constitutional violations based on two unconstitutional incidents alone.") (cleaned up) (collecting cases). Second, Plaintiffs have failed entirely to provide *any* allegations about the City's training program in the SAC. As a result, the SAC does not plausibly allege that the deficiencies in this undescribed training program were somehow the cause of any supposed, unspecified earlier incidents or that the deficiency in the program served as the causal link for Plaintiffs' injuries. No reasonable inferences can be drawn from an absence of facts.

### 3. Ratification or Failure to Investigate

"[A] local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier*, 591 F.3d at 1250 (citation omitted). Ratification can be demonstrated by a failure to discipline. *Id*. at 1253. However, "[a] policymaker's knowledge of an unconstitutional act does not, by itself, constitute ratification." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). The policymaker must make a "conscious, affirmative choice" to approve the conduct at issue. *Clouthier*, 591 F.2d at 1250.

Plaintiffs allege that Thompson and Scott are official policy makers of the City "regarding retention of property by the city of Scottsdale." (Doc. 36 ¶¶ 182, 183). In their Motion, Plaintiffs argue that Defendants can reasonably infer that the City, "acting through its policymakers city manager Thompson and city attorney Scott, is aware that the police are routinely violating Ninth Circuit Fourth Amendment law, and condones these violations." (Doc. 75 at 7). The SAC, however, is devoid of any facts demonstrating that these two policymakers made a "conscious, deliberate choice" to ratify unconstitutional conduct by subordinates. Nor does it provide facts that there was a policy or custom of declining to investigate similar incidents. Nothing in Plaintiffs' recitation of the facts relating to Count Three (Doc. 36 ¶¶ 113–126) describe Thompson as being involved in the

retention of Plaintiffs' property in any manner—nowhere do Plaintiffs allege that he knew of and/or condoned a City employee's retention of Plaintiffs' property. As for Scott, Plaintiffs allege that after Mr. Stuart contacted her via email and threatened to sue the City, she "instructed Scottsdale police to release the Stuarts ammunition to them." (Doc. 36 ¶ 124). Yet, this is the opposite of condoning or causing unconstitutional action. *See Edgerly v. City & County of San Francisco*, 599 F.3d 946, 960 (9th Cir. 2010) (a municipal defendant is liable only where the municipality's policies or customs "evince a 'deliberate indifference' to the constitutional right and are the 'moving force' behind the constitutional violation"). Plaintiffs thus fail to state a claim on a theory of ratification or failure to investigate or discipline.

### C.    Leave to Amend

The question now is whether to allow Plaintiffs' leave to amend their SAC again. "Rule 15 advises the court that leave [to amend] shall be freely given when justice so requires. This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations and internal quotation marks omitted). Nevertheless, "liberality in granting leave to amend is subject to several limitations." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (citation and internal quotation marks omitted). "Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." *Id.* Also, "when a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.' " *Chodos v. W. Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (citation omitted).

Plaintiffs filed their original Complaint on November 12, 2021 (Doc. 1) and amended it as a matter of right on December 12, 2021 (Doc. 14). Defendants moved to dismiss the Amended Complaint on January 21, 2022 (Doc. 21). Noting the significant factual and claim overlap between this matter and Mr. Stuart's two other federal pending actions, the Court dismissed the Amended Complaint and granted Plaintiffs' leave to file a second amended complaint. (Doc. 35). In doing so, the Court specifically instructed

Plaintiffs that they "shall remove the claims asserted in the FAC that have been adjudicated and are now precluded so that the Court can properly and accurately assess what claims, if any, should remain. To be clear, the Court is not authorizing Plaintiffs to add any new claims or parties. The Court will not look favorably on amendments to claims that have already been litigated and/or adjudicated in the 2017 and 2020 Actions." (*Id.* at 8). Plaintiffs entirely ignored the Court's instructions. (*See* Doc. 71 at 64). In their SAC, they neither removed the many causes of action that had already been litigated, nor refrained from adding more claims to their SAC. Defendants, in response to the SAC, filed a Motion to Strike. (Doc. 41).[4] After briefing was complete, Magistrate Judge Boyle issued a Report and Recommendation on the Motion to Strike (Doc. 53), which the Court adopted. (Doc. 57). In doing so, the Court granted Defendants' motion to strike Counts Seven and Eight of the SAC, which were newly added claims in direct contradiction of the Court's prior Order. (*Id.* at 6). But the Court agreed with Judge Boyle that it was improper to strike Counts One through Six because to do so would amount to a merits determination that the claims were precluded. (Doc. 57 at 6). The Court instead ordered Defendants to answer or otherwise respond to these counts. (*Id.*) Defendants then filed their second Motion to Dismiss (Doc. 58), which the Court granted as to all but one claim against three Defendants. (Doc. 71, 86). This case is now approximately three years old and discovery has just begun. Affording Plaintiffs yet another opportunity to amend would, as described herein, result in undue delay, be unduly prejudicial to Defendants, and be futile.

**III.   Conclusion**

Like Plaintiffs' Count Four *Monell* claim, Plaintiffs' allegations that the City had a policy or practice that caused Plaintiffs' alleged Fourth Amendment violations is implausibly and deficiently plead. Plaintiffs' Count Four against the City will be dismissed with prejudice according to the Court's authority under Rule 8 and the need to protect

---

[4] In the interim, Plaintiffs also sought a Temporary Restraining Order seeking to enjoin non-parties City of Scottsdale, City of Tempe, City of Phoenix, and Maricopa County prosecutors from prosecuting him under A.R.S. § 13-1202 (A)(1) for threats he allegedly made during conversations with his doctors (Doc. 49). The Court denied the request (Doc. 51).

against unfair burdens on litigants and judges. *See* Fed. R. Civ. P. 8(a), (d)(1); *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (affirming dismissal with prejudice of amended complaint that did not comply with Rule 8(a)); *see also Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend). Thus, though the Court erred in not assessing the sufficiency of Plaintiffs' Count Four *Monell* claim in its September Order, it did not err in dismissing the City as a Defendant.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Rule 59(e) Motion to Amend (Doc. 75) is **granted** in part. The Court's September Order (Doc. 71) is **amended** to incorporate this Order's analysis of Count Four against the City at 5:25–15:16. In all other respects, the Motion is **denied**.

Dated this 7th day of November, 2024.

Honorable Diane J. Humetewa
United States District Judge